MAUCH, Respondent, vs. CITY OF HARTFORD, Appellant.

*October 17 — November 5, 1901.*

(1, 2) *Cities: Amendment of charter: Effect upon suits.* (3, 4) *Evidence: Photographs: X-rays.* (5, 6) *Pleading: Injuries from negligence.* (7, 8, 20) *Defect in sidewalk: Notice: Evidence.* (13) *Supreme court: Directions as to procedure in trial court.* (9-12, 14-19, 21) *Special verdict, how framed: Contributory negligence: Proximate cause: Instructions to jury.* (22) *Appeal: Immaterial errors.*

1. A change in a special city charter, pursuant to the general law on the subject, has the same effect as would an amendment thereof by direct legislative enactment, if the constitution permitted such an enactment.

2. A change in a special city charter, in the manner provided in the general law on the subject, is controlled by sec. 4974, Stats. 1898, as regards its effect upon suits to recover on causes of action dependent in whole or in part upon the provisions of the charter repealed by such change.

Mauch v. Hartford, 112 Wis. 40.

3. The rule in regard to the use of ordinary photographs upon the trial of a cause for the better understanding by the jury of the evidence or the merits of the case, applies to photographs taken by the aid of X-rays.

4. Whether a photograph is proper or not in any particular situation upon the trial of a case is a matter within the sound discretion of the trial judge, and his determination cannot be disturbed if there was any reasonable ground therefor.

5. In a complaint grounded on negligence, a claim made for damages for a specific injury reaches to and includes injuries directly caused by it and so closely connected therewith as to be rightly considered a part thereof.

6. A claim made in a complaint for a specific injury "and other injuries" is indefinite and uncertain as to what the term "other injuries" means, but is sufficiently suggestive to render evidence admissible to prove injuries other than the one specifically described.

7. Evidence by a street commissioner of a city, to the effect that a sidewalk was generally out of repair, both as to the surface thereof and the stringers, some three months before the happening of an accident alleged to have been caused by reason of a defect in the walk at a particular point, is competent for the purpose of showing constructive notice to the city of such particular defect, notwithstanding evidence by the street commissioner that he repaired the walk, so far as practicable, by using the old material and without putting in new stringers, before the accident happened.

8. Evidence by the street commissioner of a city that he knew by personal examination that the stringers of a sidewalk were "all used up," established actual notice to the city of the defective condition of the walk in that regard at the particular place therein which was in controversy.

9. If all the facts in issue are covered in a special verdict by special questions free from harmful error, the refusal to submit other questions, or their submission, does not constitute reversible error if error at all, unless the number of questions submitted, and their character, be such that there is reasonable ground to believe that the essential issues involved were not intelligently and fairly considered and passed upon by the jury.

10. Only special questions, covering the issues made by the pleadings and controverted on the evidence, each so framed as to cover a single issue and admit of a direct answer, should be included in a special verdict.

11. In framing a special verdict. issues that are single should not be subdivided and covered by several questions, nor should questions. be so framed as to require the jury to decide a single issue by viewing it in various aspects.

12. A special verdict should, so far as practicable, be framed so as to secure an intelligent consideration, upon the evidence, of the issues made by the pleadings and controverted on the evidence, separately, and a decision thereof without reference to the final result upon the rights of the parties. The number of questions, ordinarily, should coincide with the number of single, controverted issues of fact and be arranged in logical order.

13. What is said by a supreme judicial tribunal in an advisory way as to matters of procedure in trial courts should be followed as a judicial direction.

14. In an action founded on negligence, the subject of contributory negligence may be submitted to the jury in this form: "Did a slight want of ordinary care on the part of the plaintiff contribute to the injury?" though the practice of dividing such subject into want of ordinary care and slight want of ordinary care is not approved.

15. The better way to submit the subject of contributory negligence of the plaintiff, in an action grounded on negligence, is by the simple question, "Was there any want of ordinary care on the part of the plaintiff that contributed to the injury complained of?" and to explain to the jury that any want of ordinary care upon the part of the plaintiff, however slight, established by a preponderance of the evidence to the satisfaction of the jury, requires an affirmative answer to the question.

16. It is improper to submit the subject of want of ordinary care of the plaintiff, in an action grounded on negligence, in this form: "Was the plaintiff guilty of a slight want of ordinary care and prudence which contributed directly to cause the injury complained of?" the mischief being in the word "directly."

17. In order to make want of ordinary care of the plaintiff, in an action grounded on negligence, a defense to the defendant's negligence, there must be the same proximate connection between the former's fault and the injury as between the latter's fault and such injury; hence, it is just as erroneous to say the proximate cause is the direct cause when applied to the plaintiff as when applied to the defendant.

18. It is improper in a question submitted to a jury, in an action grounded on negligence, or in an instruction to the jury, to limit the probable effect of the negligent act of the defendant, which he

ought reasonably to have apprehended, to the happening of the particular injury in question.

19. Where a special verdict is taken, it is improper to ask the jury to find whether they are in accord with the opinion which the court may reach upon the facts found by them, or to make any general finding of any kind in respect to the right of the plaintiff or the defendant.

20. Knowledge of the officer or officers of a city charged with the immediate duty of repairing its sidewalks, of the insufficient condition thereof in respect to being out of repair after having been once properly constructed, satisfies the element of notice to the defendant of such insufficient condition, in an action against the city to recover damages for a personal injury caused thereby, if such knowledge existed a sufficient length of time before the injury to have enabled the city, by the exercise of reasonable diligence, to repair the defect.

21. Where a special verdict is taken, general instructions on any subject involved should not be given.

22. Regardless of how numerous and inexcusable may be the errors committed on the trial of a cause, the judgment rendered must be affirmed on appeal, unless it appears probable that the substantial rights of the unsuccessful party were thereby injuriously affected.

BARDEEN, J., dissents.

[Syllabus by MARSHALL, J.]

APPEAL from a judgment of the circuit court for Washington county: JAMES J. DICK, Circuit Judge. *Affirmed.*

Action for damages for injuries alleged to have been caused to plaintiff by the unsafe condition of a sidewalk in the defendant city. The insufficiency of the walk alleged was decayed stringers upon which the plank covering of the walk was laid, causing the planks to be loose. It was claimed that the accident happened by plaintiff stepping upon the end of a loose plank, causing it to fly up and throw her down. The injuries alleged were the breaking of plaintiff's arm and other injuries. All the essential facts required for a cause of action to recover therefor were alleged, if the action was seasonably and in a proper manner commenced and the cause of action preserved down to the trial. Notice of the condition of the walk in time for defendant to have

remedied the defect, if one existed, and the necessity for re-
pairs, were put in issue by the answer, and contributory
negligence was pleaded as a defense.  Answer was further
made that plaintiff presented her claim against the city for
action by the common council thereof August 22, 1898, but
that the council failed to pass upon the same and no appeal
was taken from such failure, treating the same as a disallow-
ance, or as equivalent to a disallowance, of the claim; and
that the action was commenced October 11, 1898.

A special verdict was duly demanded by defendant.  The
jury answered the special questions, submitted in accord-
ance with such demand, as follows:

"(1) Did the plaintiff, *Anna Mauch*, receive an injury in
the city of *Hartford*, on the 7th day of August in the 1898?
*Answer.* Yes.

"(2) Did the plaintiff, on the 7th day of August, 1898, re-
ceive the injury complained of by falling on the sidewalk
on the east side of Branch street at a point sixty-nine feet
in a southeasterly direction from a lamp-post situated on
the west side of the sidewalk at a point where the sidewalk
on the east side of Main street connects with the sidewalk
on Branch street ?  *A.* Yes.

"(3) How was the injury to the plaintiff caused ?  *A.* By
a loose plank on sidewalk, tripping her.

"(3¼) Is the alleged injury to the plaintiff, arising from
the accident complained of, permanent ?  *A.* Yes.

"(3½) If you answer the 3¼ question ' Yes,' then is the
permanency of the injury without the fault of the plaint-
iff ?  *A.* Yes, without her fault.

"(4) Was said sidewalk at the place where the alleged
injury is claimed to have been received, defective and out
of repair on the 7th day of August, 1898 ?  *A.* Yes.

"(5) If you shall answer the fourth question ' Yes,' then
in what respect was such sidewalk defective and out of
order ?  *A.* A rotten stringer.

"(6) If you shall answer the fourth question ' Yes,' then
for how long a time previous to the 7th day of August,
1898, had such sidewalk been defective and out of repair at
the place where the alleged injury is claimed to have been
received ?  *A.* At least three months.

" (7) Did the defendant city have actual notice that such sidewalk was defective and out of repair, at the place where the injury is claimed to have been received, before the plaintiff received the injury complained of? _A._ Yes.

" (8) Was the alleged defect in the sidewalk at the place where the injury occurred discoverable by a person of ordinary care and prudence without removing parts of such walk apparently properly in place? _A._ No.

"(9) If you shall answer the seventh question 'Yes,' then for how long a time previous to the 7th day of August, 1898, did the defendant city have notice that said sidewalk was defective and out of repair? _A._ At least three months.

"(10) If you shall answer the fourth question 'Yes,' then could the defendant city by the exercise of reasonable care and diligence on the part of its officers have known of such defective condition and want of repair in time to have repaired it previous to the time of the alleged injury? _A._ Yes.

" (11) If you shall answer the second question 'Yes,' then was the fall of the plaintiff on the 7th day of August, 1898, on such sidewalk, the exciting cause of the pain and disability claimed to have been suffered by the plaintiff? _A._ Yes.

"(12) Did the plaintiff know of the defective condition of the sidewalk before she was injured? _A._ No.

" (13) If you shall answer the twelfth question 'Yes,' then did the plaintiff exercise greater care in passing over the defective place in such sidewalk than persons of ordinary care and prudence would have exercised in passing over such defective place in such walk, who were ignorant of such defect?

" (14) Would the condition of the sidewalk at the place in question have naturally and probably occasioned an injury to a person passing over the same who was in the exercise of ordinary care and prudence? _A._ Yes.

" (15) Was the plaintiff guilty of a slight want of ordinary care and prudence on her part which contributed directly to cause the injury complained of? _A._ No.

" (16) Should the officers in the exercise of ordinary care and prudence on their part have expected that the condition of the sidewalk at the place in question might probably result in causing an injury to a person passing over such walk while in the exercise of ordinary care? _A._ Yes.

" (17)᠈ Was the injury complained of the result of a mere accident and not from a defective condition of such sidewalk?  A.  No.

" (18)  Was the defendant city guilty of negligence on its part, or on the part of its officers, which was the natural and probable cause of the accident to the plaintiff and which accident in the light of the attending circumstances ought reasonably to have been foreseen by a person of ordinary intelligence, care, and prudence?  A.  Yes.

" (19)  If the court be of the opinion that the plaintiff has a good cause of action, we find for the plaintiff, otherwise we find for the defendant.

" And if the court should be of the opinion that the plaintiff is entitled to recover in this action, at what sum do you assess her damages?  A.  At the sum of $1,100."

Judgment was rendered in favor of plaintiff upon the verdict for $1,100 and costs, and defendant appealed.

For the appellant there was a brief by *Sawyer & Sawyer*, and oral argument by *H. W. Sawyer* and *E. W. Sawyer*.

For the respondent there was a brief by *J. C. Russell* and *O' Connor, Schmitz & Wild*, attorneys, and *Charles E. Estabrook*, of counsel, and oral argument by *Mr. Russell* and *Mr. Estabrook*.

MARSHALL, J.  When plaintiff presented her claim against appellant to its common council for consideration, and thereafter up to and inclusive of the time of the commencement of this action, there was no way for remedying the wrong complained of by judicial proceedings other than the one adopted, that is, by the commencement of an action at law against appellant by the proper service of a summons.  There is no question but that, by such service, the court obtained jurisdiction of appellant and of the cause of action stated in the complaint; but it is claimed that, subsequently, appellant duly adopted and made a part of its charter those parts of the general law of the state for the government of cities of the fourth class prohibiting 'the commencement of

any action against the city upon any claim or demand of any character whatsoever until the claimant shall first have presented his claim to the common council for allowance and the same shall have been disallowed or the council shall have failed to pass upon the same for sixty days after such presentation' [sec. 925—58, Stats. 1898, as amended by ch. 127, Laws of 1899], and that such disallowance or failure to pass upon the claim shall be a bar to any action in any court to enforce it, unless an appeal be taken from such action, or nonaction, within twenty days, in a particular manner specified [secs. 925—59, 925—60, Stats. 1898]; and that the effect of such change in the charter, upon the pending suit, was to take away the jurisdiction of the court to entertain it. Such change has all the effect of a legislative enactment. It may properly be said to be such an enactment, accomplished in the particular way designed by the constitution, prohibiting direct legislation by the primary law-making power of the state in respect to changing special city charters, but commanding the creation of a substitute for the power taken away, by a general law embodying a method for making such changes. It follows that the charter of appellant, as changed in the manner stated, is a general law as to those parts of the general city charter ingrafted upon it, the same, to all intents and purposes, as it would be if the constitutional limitation upon the legislature to act directly in such matters had not existed and it had then acted in making the amendments. *Davey v. Janesville*, 111 Wis. 628. Therefore, the change in appellant's charter falls within the saving provision of sec. 4974, Stats. 1898, which says that the repeal of a statute shall not defeat any civil liability which accrued under such statute before the repeal thereof, unless expressly done away with by the repealing statute, and actions at law founded upon the repealed statute, whether instituted before or after the repeal, shall not be impaired or defeated thereby.

Mauch v. Hartford, 112 Wis. 40.

In the course of the trial a witness who qualified as an expert as regards taking X-ray photographs, testified to having examined the bones of respondent's arm, wrist, and hand by the X-ray process, and taken two photographs thereof which correctly represented such bones. The witness produced the photographs, and they were offered and received in evidence against the objection of appellant's counsel. The ground of the objection was that the photographs were not taken upon notice to appellant or its counsel. The witness was permitted to testify that the photographs showed that the bones of the wrist were not properly in place. That was objected to upon the ground that the photographs were in court and could be examined by the jury, and that there was no claim in the complaint for a misplacement of the bones of the wrist. We know of no rule rendering notice of the taking of a photograph, to be used by one party on the trial of a cause, to the adverse party, so that the latter may be represented at the time of such taking, essential to its reception in evidence. The use of photographs in the trial of causes for some purposes, and among them that of exhibiting for the better understanding of the jury, particular objects, is permissible where there is some substantial reason therefor. *Baxter v. C. & N. W. R. Co.* 104 Wis. 307. As indicated in that case and others there referred to, if the purpose of exhibiting a photograph to court and jury is to enable them to more clearly understand the appearance of a particular locality or object material to the litigation than could ordinarily be expected from mere oral descriptions and explanations, such purpose is legitimate and warrants the court, in the exercise of its discretion, in permitting the use thereof in evidence. That situation exists where it is necessary for a nonexpert to understand the complicated structure of the human anatomy and the existence in the human body of foreign substances or of any abnormal condition. That has been several times recognized by courts since the discovery

of the X-ray process of laying the human frame bare to the eye and transferring the appearance thereof by the photographer's art, as in ordinary cases of photographing objects. It is the duty of courts to use every means for discovering the truth reasonably calculated to aid in that regard. In the performance of that duty, every new discovery, when it shall have passed beyond the experimental stage, must necessarily be treated as a new aid in the administration of justice in the field covered by it. In that view courts have shown no hesitation, in proper cases, in availing themselves of the art of photography by the X-ray process. *Jameson v. Weld*, 93 Me. 345; *Bruce v. Beall*, 99 Tenn. 303. In the last case cited, the condition of the bone of one of the plaintiff's legs, after his recovery from a fracture so far as recovery was reasonably to be expected, was material. An X-ray photograph was used to exhibit the bone to the jury in connection with the evidence of experts, who testified to the condition thereof so far as they could discover the same by the ordinary means used by surgeons. The court remarked:

"The pictorial representation of the condition of the broken leg of the plaintiff gave to the jury a much more intelligent idea of that particular injury than they would have obtained from any verbal description of it by a surgeon, even if he had used for the purpose the simplest terms of his art."

In *Jameson v. Weld* substantially the same ground was urged, why the photograph should have been excluded, as the one appellant's counsel assign here. The part of the bony structure of the person photographed was the elbow joint, and it was claimed that the arm was distorted and that in such a case there is no opportunity for the adverse party to protect himself. The court held that the suggestion was proper to be weighed by the trial court in determining the competency of the evidence, but was not of sufficient weight to warrant overruling its conclusion, in the

particular case, to permit the use of the picture. Here the artist who took the photograph was a surgeon. He testified, as before indicated, that he reproduced the natural appearance of the bones of the injured arm and wrist. Appellant's counsel had ample opportunity to cross-examine him, and improved it. The correctness of the photographs on the whole evidence was verified by the witness and the testimony of other experts, given independent of the aid of the photographs, to the effect that an abnormal condition of the wrist existed and that the location of the fracture of the large bone of the arm was in such close proximity to the wrist joint as to naturally involve it and produce the result which the X-ray made apparent to the eye.

In this connection it is well to treat the exception to the ruling permitting testimony respecting the condition of the wrist in that the bones thereof were dislocated. If that condition had existed as an independent injury, manifestly it would have been improper to allow evidence thereof against appellant's objection, if no claim was made therefor in the complaint. But such was not the case. The surgeon who treated the injured member testified that the fracture was about an inch and a half from the wrist bone; that it was clear across the large bone; that the fracture caused the small bone of the arm to raise slightly; that it tilted up; that at the time of the trial there was a slight unnatural elevation of the hand and an abnormal prominence as a result of the break; that he did not discover any dislocation of the bones of the wrist at the time he treated plaintiff. There was further evidence to the effect that respondent's fingers on the injured arm were stiff; that such condition was attributable to adhesions of the tendons of the wrist consequent upon inflammation therein caused by the fracture, and that such condition would in part explain the position of the bones as shown by the photographs. So it appears with reasonable distinctness that the injury to the

wrist was produced directly by the fracture of the large bone of the arm, and was, in effect, a part of the injury complained of, though the facts in that regard are not stated with sufficient definiteness in the complaint to draw attention thereto. However, the allegations of the complaint are broad enough to cover it in any view of the case. The complaint states that plaintiff broke her arm and was otherwise greatly injured. If counsel had desired, before answering, to obtain definite information as to what the words "and otherwise greatly injured" referred to, the way was open for him to do so.

The person who was street commissioner of appellant during the year in which respondent was injured, against objection by appellant's counsel, testified to the general condition of the sidewalk on the street where the accident occurred, as he found it several months before such accident. It is urged that the testimony was too general; that the time of the witness's examination of the walk was too remote; and that he testified that he repaired the walk, which rendered the evidence of its previous insufficiency immaterial. There does not appear to be any merit in those contentions. The witness said the entire sidewalk on Branch street (the street where the accident occurred) was out of repair; that the planks were all rotted and the stringers all used up; that he discovered that condition of things in the spring before the injury occurred; that he repaired the walk as best he could with the old material, but did not put in any new stringers; that he informed the city council that he could not properly repair the walk without putting in new stringers, but got no orders to do that, and that he did the best he could under the circumstances; that when the plank where the injury occurred was taken up the spring after the accident, it was found that the stringers were rotted. It would seem that evidence that the entire walk was defective to the knowledge of the street commissioner months be-

fore the injury occurred, and that the defect which obviously caused the plank to be loose, the rotten stringer, was not repaired, sufficiently showed a general defective condition of the walk in the vicinity where the injury occurred. How the remoteness of time, as suggested, can count in favor of appellant, is not perceived, since the rotten stringers found to exist several months before the accident occurred necessarily grew worse instead of better with the lapse of time. We assume that when counsel suggested that the testimony of the street commissioner was not material as regards the general condition of the walk, because of the length of time between his discoveries and the accident, they did not have in mind the undisputed evidence that the rotten stringers, found in the spring of 1898, were not replaced by others during that year, and the fact that stringers which were found wholly decayed several months after the occurrence complained of could not have been in a proper condition at the time thereof; and that, when they urged in support of the objection that the evidence as to the general condition of the sidewalk did not point to its condition in the vicinity where the injury was received, they overlooked the fact that the witness testified that the entire walk was out of repair in respect to the stringers.

There was some evidence of specific defects in the walk that was not, perhaps, confined as closely as it should have been to the vicinity of the injury, but we do not think that was prejudicial to appellant, since the only purpose thereof was to show constructive notice to it of the insufficiency of the walk which caused respondent's injury; and, as the case was submitted on the evidence, it conclusively appeared that appellant had actual notice of such insufficiency several months before such injury, and concluded to take the chances of letting it remain till the following year. The street commissioner testified that the members of the city council were talking of putting in a new walk, and that some thought

it would not be best to put in new stringers just for a year. The jury found that appellant had actual notice of the defect which caused the injury in time to have repaired it by the exercise of ordinary care; so the whole subject to which the evidence objected to pointed, that of constructive notice, was effectually taken out of the case. Counsel for appellant admit, as we understand it, that the evidence of the street commissioner showed actual notice to the city of the general condition of the walk at one time, but urge that it does not show notice affecting the right of the respondent to recover, because the witness said he repaired the walk. He nowhere testified that he did more than to repair the defects in the surface of the walk. The decayed stringers, as before stated, he distinctly testified he did not repair, and that he neglected to do so because it was thought by members of the common council not best to go to that expense in view of the fact that a new sidewalk was soon to be put in.

Several errors are assigned to refusals to submit to the jury special questions requested by appellant's counsel, and a failure to submit the case for a special verdict as the law requires, in response to their demand therefor. Regardless of the final conclusion we have reached as to the bearing of the failure of the trial court to follow the repeated decisions of this court as to how a special verdict should be framed, upon the merits of the case, the departure from correct practice shown by the record seems too great to permit us to pass over it without discussing the same at some length, to the end that a repetition thereof may be prevented if possible. The court has often heretofore spoken on the subject in an advisory way, which, though put in that form because judicial courtesy seemed to require it, should be regarded by trial courts in the nature of a judicial command.

This was a very plain case. The only matters put in issue by the pleadings and controverted on the evidence, hence the only facts required to be covered by special ques-

tions, were the following: "Was the place where plaintiff
was injured insufficient for public travel? If so, did the
officers of the city, charged with the immediate duty of at-
tending to such matters, have notice of such insufficient
condition for a sufficient length of time to have repaired
the walk before the accident, by the exercise of reasonable
diligence? Was the insufficient condition of the sidewalk,
claimed to have existed, the proximate cause of the injury
plaintiff received? Was plaintiff guilty of any want of or-
dinary care which contributed to produce the injury re-
ceived? What sum of money will it take to compensate
plaintiff for the injury she received?" Five questions, each
so framed as to call for a direct answer in the affirmative or
the negative, were all that were necessary, and the number
could not well have been more without invading the rule,
so often declared by this court that its repetition ought not
to be necessary to secure a reasonably careful observance
thereof, that mere evidentiary facts are not proper subjects
for special questions, neither are matters in the nature of
cross-examination of the jury; nor, ordinarily, should facts
in issue, which are really single, be subdivided or be stated
in various forms liable to mislead the jury and draw out
conflicting answers.

Attention to the statute itself (sec. 2858, Stats. 1898) is
sufficient to show that it provides that a special verdict
shall consist of special questions relating only to the ma-
terial issues of fact and admitting of direct answers,— that
is, issues of fact made by the pleadings, not issues that arise
by mere conflicts between witnesses,— and answers directly
affirming or denying the existence of such facts. *Eber-
hardt v. Sanger*, 51 Wis. 72; *Jewell v. C., St. P. & M. R.
Co.* 54 Wis. 610; *Montreal River L. Co. v. Mihills*, 80 Wis.
540; *Haley v. Jump River L. Co.* 81 Wis. 412; *Ohlweiler v.
Lohmann*, 88 Wis. 75; *Farley v. C., M. & St. P. R. Co.* 89
Wis. 206; *Klochinski v. Shores L. Co.* 93 Wis. 417; *Louis*

*F. Fromer & Co. v. Stanley,* 95 Wis. 56; *Baxter v. C. & N. W. R. Co.* 104 Wis. 307. Those cases all condemn such verdicts as the one before us, in unmistakable language. They recognize that there is a wide discretion vested in trial judges in framing special verdicts, and that, in the exercise thereof, they may subdivide issues which are in fact single, and may present an issue in more than one form and the case be free from prejudicial error, and refuse to submit questions suggested by counsel which are in every respect proper, if the subject thereof is covered by other questions (*Werner v. C. & N. W. R. Co.* 105 Wis. 300, 309); but do not, and manifestly could not properly, hold that judicial discretion extends to the framing of such verdicts on a plan which is not only outside the meaning of the statute, but contrary to its very letter and spirit, and which defeats its object. Such a practice tends to turn what was intended to be a valuable aid in securing an intelligent and methodical consideration by the jury of each essential fact in controversy constituting the plaintiff's cause of action, or the defense thereto in the case of affirmative matter in that regard, without undue influence as to the final result, into a means of embarrassing a jury and defeating a meritorious cause of action or defense. If the law, according to its letter and spirit and the decisions of this court, were firmly administered by trial courts, no party with an honest cause, or attorney advocating such a cause, would be liable to look upon it other than as a valuable aid in securing justice.

Here we have twenty-one questions. The first two cover the subject of whether the plaintiff was in fact injured at the time and place alleged in the complaint,— a matter which, though put in issue by the pleadings, was not in controversy on the evidence, and therefore was not required to be submitted to the jury for decision. As suggested in *Montreal River L. Co. v. Mihills,* 80 Wis. 540, such ques-

tions are not material and controverted questions of fact
within the meaning of the statute. A fact alleged in the
complaint and admitted by the answer, or, if denied by the
answer, admitted on the trial, either expressly or by not
challenging positive evidence which will not permit of a
decision other than one way, is not a fact in controversy
within any reasonable meaning of the term. The third
question was not so framed as to call for a direct answer;
and, though it was within the issues, it was covered by the
question as to whether the alleged insufficiency of the walk
was the proximate cause of the injury. The next question,
though proper in form, was unnecessary. It was directed
to the extent of plaintiff's injury, which might well have
been left to the consideration of the jury in determining
the amount of the damages. The next question related to
whether plaintiff was guilty of contributory negligence in
respect to the permanency of her injury, a subject on which
we fail to find any evidence calling for a finding. The next
question, being the sixth, is the first one in the special ver-
dict which was really necessary to a proper submission of the
case. It covered the subject of whether the sidewalk, at
the place where and time when plaintiff was injured, was
insufficient for public use. The jury answered the question
in favor of plaintiff, leaving only the question of notice to
be likewise found to establish appellant's negligence as al-
leged. The seventh question violated the rule requiring in-
terrogatories to be so framed as to call for affirmative or
negative answers and to be not so framed as to require the
jury to state the ground of any particular conclusion reached
by them. *McCoy v. Milwaukee St. R. Co.* 88 Wis. 56. Fur-
ther, the subject thereof was covered by the preceding ques-
tion. This is the language used: "If you shall answer the
fourth question 'Yes,' then in what respect was such side-
walk defective and out of order?" The eighth question
asked the jury how long prior to the accident the sidewalk

was insufficient at the place where the accident occurred. It did not call for an affirmative or a negative answer, and was included in the twelfth question on the subject of whether defendant knew of the insufficiency of the walk in time, by the exercise of reasonable diligence, to have repaired the same before the accident complained of. The next three questions are also covered by the twelfth question, and were wholly unnecessary. The last of such three is defective in respect to the form of the answer called for. The thirteenth question related to whether the fall on the walk was the cause of the disability complained of, a matter not in dispute. The next question called for a finding as to whether plaintiff had knowledge of the defect before she was injured. There does not appear to have been any evidence suggesting that she had such knowledge, therefore there was no necessity for submitting the question to the jury. The next question depended upon the preceding one and was of course unnecessary. The sixteenth question called for a finding as to whether the insufficiency of the sidewalk was such as to be liable to cause an injury to a person passing over it in the exercise of ordinary care. That was not a fact in issue on the pleadings, except as covered by the general allegation that the sidewalk was insufficient, and the fact in that regard was covered by the sixth question.

The seventeenth question was intended to cover the subject of whether plaintiff was guilty of contributory negligence. This language was used: "Was the plaintiff guilty of a slight want of ordinary care and prudence on her part which contributed directly to cause the injury complained of?" That was submitted in lieu of the following, requested by appellant's counsel: "Did a slight want of ordinary care on the part of the plaintiff contribute to the injury?" Had the learned trial court adopted the language suggested by appellant's counsel, no error would have been committed.

However, the practice of dividing the subject of contributory negligence into want of ordinary care and slight want of ordinary care does not meet with our approval. The better way would have been to submit a plain question covering the whole subject, thus: " Did want of ordinary care on the part of the plaintiff contribute to produce the injury she received ? " and to explain to the jury that the burden of proof to establish the affirmative of the interrogatory by a preponderance of the evidence was upon defendant; that such establishment, to the satisfaction of the jury, of want of ordinary care, however slight, would entitle appellant to an affirmative answer; that ordinary care, within the meaning of the question, meant such care as is ordinarily exercised by the great mass of mankind in the same or similar circumstances; and that such want of care was not a contributing cause to produce the injury unless there was a proximate connection between such injury and such want of care; and that might well have been followed by an explanation of the term " proximate connection." The question submitted was clearly defective. The same element of proximate cause enters into and is essential to contributory negligence as to the negligence that it contributes to and which is, in the absence of the defense of contributory negligence, actionable. What that is has been so often fully explained that it must be assumed the bench and bar understand it. So, in explaining what is a proximate connection between want of ordinary care, on the part of either plaintiff or defendant, and the injury involved in a case like this, which is necessary to render such fault a subject for consideration by courts, it is plain that it is just as erroneous to say that the proximate cause is the direct cause as to one party as to the other. In *Sutton v. Wauwatosa*, 29 Wis. 21, this court said that, to make want of ordinary care on the part of the plaintiff a defense to the claim for damages based on the defendant's actionable negligence, it must appear

that there was such a relation between plaintiff's fault and the injury that such injury was a natural and probable result thereof and that an accident and consequent injury to the plaintiff might naturally and reasonably have been expected under the circumstances. Contributory negligence, in its literal sense, means that there was mutual fault,— fault of the same nature upon the one side as upon the other, though not necessarily in the same degree, so far as the law takes notice thereof to award redress for wrongs. So contributory negligence, obviously, is impossible, without the connection between the fault of the contributor and the injury visited upon his personal or property rights, known in the law of negligence as the proximate cause, as explained in many cases decided by this court, involving the right to redress for injuries attributable to responsible human agencies on the ground of negligence. *Deisenrieter v. Kraus-Merkel M. Co.* 97 Wis. 284, 288; *McFarlane v. Sullivan,* 99 Wis. 363, 364; *Schneider v. C., M. & St. P. R. Co.* 99 Wis. 378, 388; *Ward v. C., M. & St. P. R. Co.* 102 Wis. 219, 220; *Bigelow v. Danielson,* 102 Wis. 474; *Baxter v. C. & N. W. R. Co.* 104 Wis. 317, 319; *Wills v. Ashland L., P. & St. R. Co.* 108 Wis. 255, 261; Beach, Contributory Negligence, §§ 7, 14.

Notwithstanding what has been said in regard to the seventeenth question, the error committed in submitting it and in rejecting a proper question on the subject intended to be covered by it, proposed by appellant's counsel, did not work prejudice to appellant, because in answer to the tenth question the jury found that the insufficiency in the sidewalk, which caused the injury, was not discoverable by a person of ordinary care without removing the plank of the walk which was apparently properly in place. There was no evidence in the case to warrant a finding that respondent had actual knowledge of the rotten stringer, and as a matter of law it was not her duty to remove the planking and

examine the bed timbers of the walk before attempting to proceed. We do not see clearly that there was any question of contributory negligence to be submitted to the jury on the evidence; but if there was, it was sufficiently found in plaintiff's favor by the finding referred to.

The next question, numbered 16 in the verdict, called for a finding as to whether the officers of appellant ought, under the circumstances, to have anticipated that the condition of the walk might probably result in an injury to a person passing over the same. The question was entirely unnecessary. It covered a subject which was not for the consideration of the jury except as it was involved in the question as to whether the sidewalk was insufficient for public use.

Question numbered 17 asked the jury whether the injury was the result of mere accident. That only tended to confuse the jury. It had no necessary or proper place in the verdict, under the circumstances, since the facts in issue, constituting the alleged negligence and its proximate connection with the injury, rendering it actionable, were covered by proper questions, though the wording thereof might have been improved. One of such questions was the eighteenth. The language thereof is as follows: "Was the defendant city guilty of negligence on its part, or on the part of its officers, which was the natural and probable cause of the accident to the plaintiff and which accident in the light of the attending circumstances ought reasonably to have been foreseen by a person of ordinary intelligence, care, and prudence?" It would have been far better to use the following simple form for that question: "Was the insufficiency of the walk the proximate cause of the injury?" with proper instructions as to the meaning of the term "proximate cause." The question was restrictive, though that was in favor of appellant. It limited the subject of the probable effect of the insufficiency of the walk, which the appellant's officers ought reasonably to have anticipated, to the happen-

ing of the particular accident in question. That, of course, was wrong, as explained in *Deisenrieter v. Kraus-Merkel M. Co.* 97 Wis. 284.

The next question, numbered 19 in the verdict, but in fact, the twenty-first, was as follows: "If the court be of the opinion that the plaintiff has a good cause of action, we find for the plaintiff, otherwise we find for the defendant. And if the court should be of the opinion that the plaintiff is entitled to recover in this action, at what sum do you assess her damages?" The first part of the question, so called, is not in the form of an interrogatory, and in fact is not one at all. It was manifestly improper. Why it should have been thought necessary or even advisable or permissible to ask the jury to say whether they were in harmony with whatever conclusion the court might ultimately reach as to the law of the case, is beyond our comprehension. It is probably as harmless as would have been a direct question as to whether the jury were willing that the legal rights of the parties, on the facts found, should be determined by the court. But why incumber a verdict with such useless material, contrary to the correct practice as it has been laid down over and over again? For the subject covered by the question, so called, only this, or something equivalent, was required: "What sum of money will compensate plaintiff for her injury?"

All that has been said seems justified in order to bring into clear light the useless and often prejudicial labor put upon special verdicts in some jurisdictions, whereby a mass of unnecessary and confusing questions are submitted to juries, instead of a few plainly worded interrogatories covering the facts put in issue by the pleadings and controverted on the evidence, which the law requires. It is the perversion of the law as to such verdicts that often renders its administration laborious, perplexing, and uncertain as regards reaching a result that will stand the test of a review

by the supreme judicial tribunal, even where the greatest possible latitude, reasonable, is given to the legislative command to overlook imperfections not prejudicing the substantial rights of the parties. For the mass of questions we have reviewed, it would have been very easy to submit, under proper instructions, the following: "Was the sidewalk, at the place where and time when plaintiff was injured, insufficient for public use? If the jury answer 'Yes' to the first question, did the defendant have notice of such insufficiency so that, by the exercise of reasonable diligence, it might have remedied it before the plaintiff was injured? If the jury say 'Yes' to the first and second questions, was such insufficient condition of the sidewalk the proximate cause of plaintiff's injury? Was plaintiff guilty of want of ordinary care which contributed to produce her injury? What sum of money will compensate plaintiff for her injury?" We do not say but that other questions might properly have been added to those suggested; but none would have been necessary, nor, probably, in the least helpful in reaching a just result in the manner contemplated by the statute, as repeatedly judicially declared.

What we have said covers all the imperfections in the special verdict suggested by appellant's counsel and many that were not suggested. The fact that proper questions, proposed, were rejected, was not prejudicial, since the entire subject of the action was covered by those which may be considered as properly submitted. After a full review of the case, notwithstanding a multitude of errors, we are unable to discover any that can rightly be considered prejudicial to the substantial rights of the litigants. After eliminating from the verdict all useless and erroneous questions, we have left, in some form which, in all reasonable probability, was understood by the jury, questions covering the facts essential to plaintiff's cause of action, and which were found in her favor. It is hoped that imperfections, such as

we have here pointed out, will grow less. While the statute requires this court to overlook harmless errors (sec. 2829, Stats. 1898), manifestly the commission of them should be avoided so far as practicable. Were it not for the beneficent statute, re-enforcing the old rule that mere error should not be permitted to disturb the course of justice, it would be difficult to see how such a perversion of the legislative purpose in giving to parties the right to a special verdict, as the submission of a mass of useless and improperly worded questions with those necessary to a complete verdict, could be passed over as insufficient to warrant disturbing the judgment entered upon the verdict; and even then we are compelled to extend the mantle of the statutory rule to its uttermost to save the judgment.

The court charged the jury, in respect to the question of whether the defendant had notice that the sidewalk was insufficient before plaintiff was injured, that 'if the street commissioner had such knowledge, that was knowledge to the city if the officer's knowledge was obtained a sufficient length of time before the injury in the exercise of reasonable care and diligence under the circumstances.' That was excepted to. It is, as claimed by counsel for appellant, without meaning. The interrogatory to which it was directed only covered the subject of knowledge of the defendant before the injury, without regard to time. The language, to the effect that knowledge of the street commissioner was knowledge of the city, should not have been limited by the language, " if such officer had knowledge a sufficient length of time, in the exercise of reasonable care and diligence under the circumstances." Again, the added element contained no information as to what the words "sufficient length of time " referred to. It should have been entirely omitted from the instruction, or the question should have been changed to cover the subject of whether appellant had knowledge of the insufficiency of the walk in time to have

remedied the same before plaintiff was injured, by the exercise of reasonable diligence; and the last clause of the instruction should have been completed by adding the words, "to have remedied the insufficiency," or some equivalent. The answer to the question, in view of the instruction, failed to cover any fact in issue either on the pleadings or the evidence. However, the errors in respect thereto are of no avail to appellant, since the jury found, in answer to one question, that the city had actual notice of the insufficiency of the walk for three months before the injury occurred, which was sufficient, as a matter of law, to have enabled it, by the exercise of reasonable care, to remove the danger before plaintiff was injured.

It is further contended in regard to the instruction discussed, that it was faulty because there was no evidence in the case of actual notice to defendant of the insufficiency of the walk. That subject has been heretofore referred to. There was little or no evidence tending to show that appellant's street commissioner knew that the sidewalk was insufficient, in time to have remedied the difficulty before plaintiff was injured, at the precise spot where the injury occurred, by observing the rotten stringers there situate; but the evidence is undisputed, as we look at it, that he, for months before the accident, knew that the bedpieces of the walk were, as a rule, decayed and wholly insufficient to hold planks in their proper places by nails driven through them into such pieces. That was amply sufficient to charge him, and his principal, with actual knowledge of the condition of the stringers at the place of the accident.

At the close of the instructions directed to particular questions, a general charge was given on the subject of negligence. Objection is made that the court improperly defined the term "negligence." Probably the definitions given by the court, of legal terms applicable to negligence, were correct enough as mere statements of abstract propositions, but

all general instructions on the subject should have been omitted. The law imposed upon the city the duty of keeping its sidewalks in a reasonably safe condition for public travel. A finding that it failed to perform that duty, notwithstanding notice to its street commissioner of the insufficiency of the walk for a sufficient length of time before plaintiff was injured to have performed its duty, left the legal result to be declared by the court on the application for judgment. The jury had nothing to do with it. General instructions, and especially the statement of mere abstract principles of law, with which the jury have no possible concern, should be wholly omitted where a special verdict is taken. *Ward v. C., M. & St. P. R. Co.* 102 Wis. 219; *Schneider v. C., M. & St. P. R. Co.* 99 Wis. 378, 388; *Rhyner v. Menasha,* 107 Wis. 201, 206. Any other course tends to defeat the object of a special verdict. No objection was made to the instruction that has called out what is here said, except that it did not clearly define the degrees of negligence applicable to the case so the jury could get an intelligent idea thereof. As we hold that the jury had nothing to do with that subject, and that nothing was said by the court in respect thereto prejudicially wrong, unless it was by violating the rule against giving any general instructions at all,— which point was not raised by a proper exception,— no error is before us in respect to the instruction that can avail appellant.

The points presented for consideration by appellant's counsel that have not been discussed have all been considered. Each has been specially treated that seemed to require such notice. We have not discovered any good ground for deciding that injustice was done to appellant, which we are permitted by a proper exception to deal with, except in an advisory way in the interest of a better administration of the law in respect to special verdicts. We have spoken plainly on that subject, as duty seemed to require, in order

to eradicate, if possible, the bad practice of submitting cases for the consideration of juries in a radically different way from that designed by the statute. A special verdict such as the law contemplates, as before indicated, is not a thing which plaintiffs or attorneys in honest cases, or trial courts, should look upon with disfavor. The difficulties supposed to exist in respect to such verdicts are not created by the statute but by a failure to understand and properly administer it. There is little or no difficulty, in most cases, in framing a special verdict, calling for an affirmative or negative answer as to the truth of each particular proposition of fact necessary, from the standpoint of the complaint, to the plaintiff's cause of action, put in issue by the answer, and controverted on the evidence. If one does not anchor to the statute by following that course, he is liable to experience all the difficulties which some persons suppose are necessary incidents of the right of litigants to special verdicts. One may keep to such anchorage and yet exercise a broad discretion in framing the special questions. They may be so stated as to treat a fact in issue, which is really single, as divisible, and a particular subject of fact may be submitted in different ways, so the jury may be compelled to look at it from different standpoints, without the commission of reversible error. That does not hold strictly to the letter, nor perhaps the spirit, of the statute, but has been too often held to be within its reasonable scope to be now denied; yet, it may be carried so far as to defeat the object of the law. The submission of the propositions of fact that are really single as involving distinct issues, and the presentation of such facts in different ways, should not be indulged in under ordinary circumstances.

*By the Court.*— The judgment appealed from is affirmed.

BARDEEN, J. Sec. 2829, Stats. 1898, is a beneficent statute. Like charity, it covers a multitude of sins. I cannot resist

the conviction, however, that it has been torn to tatters in
this case.   The majority opinion demonstrates conclusively
that the trial court erred in the submission of the special
verdict and in the instructions to the jury.   To this I agree,
but I cannot agree that such errors are so inconsequential as
to be excused.   They touch the important issues in the case.
They cover matters of vital importance to the defendant,
and, in my judgment, are more than sufficient to warrant a
judgment of reversal.