CURKEET, Respondent, vs. STEINHOFF and others, Appellants.

*November 10—December 4, 1906.*

*Trial: Special verdict: Specific finding: Payment: Interest: Costs: Banks as collecting agents: Authority.*

1. On the facts, stated in the opinion, it is *held* that it was proper for the court, as part of a special verdict, to take the jury's finding as to a specific fact, although such finding was involved in the issue covered by another question of the special verdict.
2. A controversy having arisen as to the exact amount due plaintiff on a sale, plaintiff refused to accept the sum which was offered him as payment in full for the property purchased. Thereafter plaintiff drew on defendants through a bank for the amount he claimed, with instructions to the banking officers to receive no amount in payment of such draft other than the sum specified therein. Defendants appeared and left with the bank the sum previously offered, which was received and retained by the bank and offered to plaintiff, who refused to accept it as payment for his claim, and brought suit for the full amount claimed. *Held:*
    (1) Defendants' deposit did not constitute payment of plaintiff's claim *pro tanto.*
    (2) Plaintiff was entitled to recover in the action the full amount of his claim and interest, with costs.
3. From the authority given a bank by receiving a draft for collection there arises no implication of authority other than to obtain payment in full. Any implied authority to accept part payment is excluded.

APPEAL from a judgment of the circuit court for Grant county: GEORGE CLEMENTSON, Circuit Judge. *Affirmed.*

On February 26, 1902, plaintiff held an auction at his farm in the town of Elk Grove, Lafayette county, and at such sale defendants bid off certain personal property, to be paid for in cash at the time of the sale. Included in the property bought by the defendants was a group of heifers. There is no dispute as to the other property bought by them, but they claim that the group of heifers which they bought

contained eight animals, and that a certain dark red heifer
with a star in the forehead was included among them. The
sale of the cattle was conducted as follows: The cattle were
taken from sheds by plaintiff's assistants in groups as they
were wanted. The group was driven through a gate into the
inclosure where the sale was held. This gate was then closed
and the group in the inclosure was auctioned off. After they
were sold the group was driven into a pasture through a gate
at the opposite side of the inclosure from the sheds. This
pasture gate was closed before another group was taken from
the cattle sheds into the sale ring. In the early part of the
cattle sale a group of two animals was disposed of to one
John Huntington at $37 per head. This group was then
driven into the pasture. Several sales intervened between the
sale to John Huntington and the driving into the ring of the
group of heifers which defendants purchased. Defendants
claim that this group contained eight heifers, and that the
dark red heifer with the star in the forehead was among
them. Plaintiff claims that the group contained but seven
heifers, and that the dark red heifer with the star in the fore-
head was not among them, but had been sold as one of the
group of two head to John Huntington. Defendants bid in
the group at $24.50 per head. A few days after the sale one
of the defendants came to plaintiff's farm to settle for the
property purchased by them, and then claimed that the red
heifer was among their purchase of heifers. Plaintiff denied
this and refused to settle with defendants by allowing them
what they demanded, namely, the difference between the sale
price of the dark red heifer and the price per head at which
the defendants had bid in the group of heifers. The heifers
were thereafter delivered to defendants but not paid for on
delivery. The total amount claimed by plaintiff for all the
property sold to defendants at the auction was $435. This
included seven heifers at $24.50 per head. On March 31,
1902, plaintiff drew by bank draft on defendants for $435

·and instructed the bank not to receive less than the face of the draft. On its being presented to defendants for payment they offered $417.50 as payment in full of the draft. The difference of $17.50 was made up of $12.50, the difference between the amount for which the red heifer had been sold to Huntington, and $24.50, the price per head at which the defendants had bid in the group of heifers, and $5, claimed by defendants as their expense for having been compelled to go a second time to obtain their purchases. Plaintiff refused to receive this amount, and it has been in the bank since then. Plaintiff brought this action to recover the amount due him from defendants. His claim included $5 for keeping the stock from the time of the sale until taken away by defendants. On the trial the court submitted certain questions to the jury to be answered by them as a special verdict. The questions and the answers of the jury thereto are as follows:.

"(1) Was the large dark red heifer with the star in the forehead, which was one of the eight heifers the plaintiff owned at the time of his sale, sold, at the time the cows were sold, to John Huntington, and turned from the sale yard into the pasture before *Stephens* bid upon the bunch of heifers that were turned into the sale yard? *A.* Yes. (2) How many heifers were there in the sale ring at the time *Mr. Stephens* bid off the lot at $24.50 per head? *A.* Seven (7). (3) How much, if anything, ought the plaintiff to recover from the defendants for keeping the live stock *Mr. Stephens* had bid off, from the time of the sale on Wednesday to the following Saturday morning, when *Mr. Stephens* took the stock away? *A.* Nothing. (4) Did the defendant *Steinhoff* when, on or about March 31, 1902, he went to the First National Bank in Platteville, deliver to Mr. Hetherington, the cashier of the bank, $417.50 to be unconditionally and absolutely given to the plaintiff upon the debt of the defendants to him? *A.* Yes."

The finding of the jury on the question of partial payment was disregarded by the court, and, upon the facts shown, it was held that no partial payment had been made. Judgment

was awarded in favor of plaintiff for $435, with interest from March 31, 1902, and for costs. This is an appeal from such judgment.

*T. L. Cleary,* for the appellants.

For the respondent there was a brief by *Orton & Osborn* and *J. W. Murphy,* and oral argument by *C. F. Osborn.*

SIEBECKER, J. It is averred that the submission of the first question in the special verdict was prejudicial error, because the inquiry propounded did not cover an issue raised by the pleadings, and its submission was confusing and misleading to the jury. It appears that the main controversy turned upon the question of whether there were seven or eight heifers in the group brought into the sale ring and sold to defendants. True, this issue is fully covered by the second question of the special verdict. It appears, however, that this controversy arose over the disputed claim of the parties to the heifer described and specified in the first question; it being averred and claimed by defendants that this particular animal was of the group, eight in number, which they purchased, while plaintiff asserted that it was not one of this group, but that it had been sold to Huntington before defendants purchased. This situation presented the inquiry as to whether this particular animal had actually been sold to Huntington and kept separate from the group defendants purchased, and made it one of the vitally litigated facts in the case, and one which the jury must have specifically ascertained to enable them to answer the second question of this verdict. Under such circumstances it was proper for the court to take the jury's specific finding as to this fact, though such finding was involved in the issue covered by the second question. We do not discover that this procedure misled or confused the jury. *Mauch v. Hartford,* 112 Wis. 40, 87 N. W. 816.

Appellants next urge on our attention the claim that the

court improperly allowed plaintiff his costs in the action. This question, however, will depend upon whether the court correctly held that defendants had not made a payment of $417.50 on plaintiff's claim for the property purchased from him at the auction sale. The jury found that such payment had been made, but the court disregarded such finding, evidently upon the ground that the undisputed facts showed that such payment had not been made. It appears that when defendants called for the delivery of the property they had purchased from plaintiff, the parties disagreed as stated, and plaintiff refused to accept the sum of $417.50 which was offered to him as payment in full for the property defendants had actually purchased. Defendants thereafter, without paying the sum due plaintiff, received all of the property they claimed except the animal in dispute. Some days after such delivery the plaintiff, through the First National Bank of Platteville, drew on defendants for the sum of $435, the amount he claimed for the property delivered to defendants, with instructions to the banking officers to receive no amount in payment of such draft other than the sum specified. Defendants appeared at the bank and left the sum of $417.50. This was received and retained by the bank and offered to plaintiff in payment of the draft, but he refused to accept it as payment of his claim and therefore declined to receive it. The contention of defendants is that this transaction through the bank constitutes payment of plaintiff's claim to the extent of the amount so left with the bank and limits the amount of plaintiff's recovery under the verdict to $17.50. We do not find such to be the consequences of this transaction for the collection of plaintiff's claim. The bank as collecting agent for plaintiff was given no authority to receive part payment, but was specifically instructed to receive nothing except the full amount of the draft. Plaintiff's attitude in the matter had been brought to defendants' notice by his repeated refusals to accept an offer of any sum less than the

full amount claimed. The contention that the court erred in not following the finding of the jury, to the effect that payment to the bank under the circumstances was a discharge of plaintiff's claim to the amount received by the bank and left only a balance of $17.50 due from them when the action was commenced, is not sustained. It is apparent that the bank had no authority to receive part payment of the debt. As stated, the bank had been expressly instructed to that effect. It could not disregard such instructions and accept part payment of the debt. But, were the case devoid of such specific instructions to the bank, still we find no basis on which defendants could claim this to be a partial payment of the claim. It is undisputed that the bank's authority arose out of the fact that the draft was placed in its custody as plaintiff's collecting agent. From the authority so given arises no implication of authority other than to obtain payment in full, and any implied authority to accept part payment is excluded. Selover, Bank Collections, § 44; 5 Cyc. 505; *Lowenstein & Bros. v. Bresler,* 109 Ala. 326, 19 South. 860; *Capital State Bank v. Lane,* 52 Miss. 677; Story, Agency (9th ed.) § 98. The court properly determined that the undisputed evidence showed that no part of the debt had been paid by defendants, and the jury's finding on this subject must be disregarded. From this it results that plaintiff was entitled to recover in the action the full amount of his claim with interest thereon from the time it was due and his costs of the action.

An examination of the exceptions urged to the reception of evidence over objection and to the court's conduct in asking witnesses questions shows that the evidence objected to was competent and material, and that the court properly propounded the questions to the witnesses in the case.

We discover no prejudicial error in the record.

*By the Court.*—Judgment affirmed.