Wolff, Appellant, vs. Carstens and another, Respondents.

*January 11—January 30, 1912.*

*Trial: Reception of evidence: Instructions to jury: Argumentative charge: Invading province of jury: Special verdict: Form: Omission of essential fact: Appeal: Harmless errors.*

1. Evidence may be of such slight weight and importance that its admission, though erroneous, is not ground for reversal.
2. An extended and argumentative charge to the jury, invading the jury's function of determining the weight, probative effect, and sufficiency of the evidence, is *held* to have been erroneous, but not in this case to have affected the substantial rights of the appellant.
3. In an action to recover for loss sustained in the purchase of a share of corporate stock alleged to have been induced by defendants' fraudulent representations, the special verdict negatived any conspiracy on the part of defendants and contained no finding that plaintiff relied on any of the representations made by them and was thereby induced to purchase the stock. Plaintiff made no request for a finding on that point.  *Held*, that on appeal from a judgment against the plaintiff it must, under sec. 2858*m*, Stats. (Laws of 1907, ch. 346), be deemed that the trial court determined that fact against him.
4. Questions submitted for special verdict should not be separated into subsidiary inquiries as to mere evidentiary matters.  Only special questions covering the issues made by the pleadings and controverted on the evidence, each so framed as to cover a single issue and admit of a direct answer, should be included.

Appeal from a judgment of the circuit court for Manitowoc county: Michael Kirwan, Circuit Judge.  *Affirmed.*

The complaint alleges that the plaintiff purchased one share

of stock in the Manitowoc County Co-Operative Company, that he was induced to make the purchase upon the fraudulent representations of the defendants, and that if the representations had been true the share of stock would have been worth $300. It is alleged that the stock is without value. Judgment is demanded for the sum which would have been the value of the share if the representations made by the defendants had been true.

The Manitowoc County Co-Operative Company (hereafter called the company) was organized to conduct a mercantile and other business upon the co-operative plan. Its articles of incorporation were filed in the office of the secretary of state on the 15th of June, 1904, and recorded with the register of deeds for Manitowoc county on the 18th of that month. The capital stock was $50,000, divided into 500 shares of $100 each. Fifty per cent. of the capital stock was never subscribed for, nor was twenty per cent. ever paid in.

The defendant *Carstens* had been engaged in a mercantile business for about twenty-five years. He was interviewed by the promoters of the company and solicited to turn over his store to the company. To this he finally consented and transferred his stock of goods to the company. He was made manager, and was in charge of the business until it was turned over to a receiver in July, 1907. At this time the assets of the company were $16,145.44.

The plaintiff testified that before his purchase of his share of stock both of the defendants had stated and falsely represented to him that the company was doing a good paying business; had paid eight per cent. dividends and was going to declare another dividend; that it was incorporated under the mutual co-operative laws of the state and authorized to do business; that they were going to increase the business by establishing branch stores and by taking up other lines of business as they got new stockholders; that they had a paid-up stock of goods worth $10,000 or $12,000; and that he relied

upon and was induced to make this purchase of stock by these representations.

The defendants testified that they had talked with the plaintiff about becoming a member of the company, but denied having made any false statements to him.

Plaintiff further testified that he had signed the subscription list; that he had received a certificate of stock numbered 54 and dated June 12, 1905; and that he paid the money for the share of stock to the defendant *Carstens*.

The court submitted a long verdict to the jury and instructed them most elaborately and at length in connection with it. In the instructions submitted in connection with the special questions the court stated the evidence as he recollected it, gave the inferences which might be drawn from the evidence, and presented by way of argument the reasons that should have weight in passing judgment on the evidence adduced by the parties to support their respective contentions. To illustrate: Upon one of the sub-questions of the first question, propounding the inquiry as to whether the defendants had represented to the plaintiff that the corporation owned a stock of merchandise worth $10,000 or $12,000 fully paid for, the instructions stated the facts regarding the inventory of *Mr. Carstens'* stock, that the stock could be paid for only out of the funds of the company, submitted that since only fifty-four shares of stock had been issued it was manifest that the amount represented thereby would not be sufficient to pay for a stock of goods worth $10,000 or $12,000, and pointed out that if *Carstens* represented to the plaintiff that the company had a stock of goods worth $10,000 or $12,000 he must have known that it was not fully paid for. Bearing upon the question of whether the defendants had made the representations claimed, the court stated to the jury that they might properly consider, as bearing on this question, that the defendants had lived in the community for many years, had conducted businesses there, and must have known that the plaintiff, if he became a stockholder in the company, would learn the facts

regarding the value of the stock of goods held by the company and what had been paid for it. He also stated in connection with this same question that the jury might consider the bearing of the plaintiff upon the stand, his intelligence and capacity, and whether, in view of the fact that the plaintiff's share of stock was numbered 54 and of the fact that each share was worth $100, the defendants could have caused him to believe that a stock of goods of the value of $10,000 or $12,000 had been bought by the company theretofore and had been fully paid for by the company. The instructions upon the other issues submitted were likewise elaborated and as extensive in their scope and treatment of the evidentiary facts bearing on those issues.

The jury returned the following verdict:

"(1) At or before the time when plaintiff paid for his stock in the Manitowoc County Co-Operative Company, an alleged corporation, did said defendants, or either of them, represent to plaintiff:

"(a) That at least one half of the capital stock of said corporation had been fully subscribed and at least twenty per centum thereof had been actually paid in? A. As to *Carstens,* No. As to *Lehmkuhl,* No.

"(b) That said corporation then owned a stock of merchandise of the value of $10,000 or $12,000, which had been fully paid for? A. As to *Carstens,* Yes. As to *Lehmkuhl,* No.

"(c) That the shares of stock of said corporation were then worth their par value? A. As to *Carstens,* Yes. As to *Lehmkuhl,* Yes.

"(d) That said corporation had theretofore paid a dividend of eight per cent. from its net earnings? A. As to *Carstens,* No. As to *Lehmkuhl,* No.

"(e) That said corporation was organized upon the mutual or co-operative plan as set forth in sec. 1786e of the Wisconsin Statutes of 1898? A. As to *Carstens,* No. As to *Lehmkuhl,* No.

"(f) That said corporation was then doing a profitable business? A. As to *Carstens,* Yes. As to *Lehmkuhl,* Yes.

"If you answer 'No' to each and all of the foregoing ques-

tions, then do not answer any of the following questions excepting the tenth.

"(2) If as to any one or more of the subdivisions of the first question you answer 'Yes,' then answer this: Were any of the representations, which your answer of the first question finds to have been so made to plaintiff, substantially false at the time when they were so made to him? *A.* Yes.

"(3) If your answer to the second question be 'Yes,' then answer this: Which, if any, of said false representations were so made with knowledge of their falsity (a) by defendant *Carstens* and (b) by defendant *Lehmkuhl?* *A.* (a) By *Carstens,* the representations specified in subdivision 'b' of the first question. (b) By *Lehmkuhl,* the representations specified in subdivision —— of the first question.

"(4) If by your answers to the third question you find that each or either of the defendants knowingly made said false representations to plaintiff, then answer this: At the time when said false representations were so made to plaintiff, was there existing between said defendants, *Carstens* and *Lehmkuhl,* an unlawful conspiracy, the object and purpose of which was to effect, by means of said false representations, the sale of certificates of stock of said corporation, in order to thereby obtain money for said corporation, or for said defendants, or for both said corporation and said defendants? *A.* No.

"(5) If your answer to the fourth question be 'Yes,' then answer this: Were said false representations or any thereof made to plaintiff by defendants, or either of them, for the purpose of carrying out said conspiracy? *A.* ——.

"(6) If your answer to the fifth question be 'Yes,' then answer this: Did plaintiff so far rely on the truth of any said false representations made for the purpose stated in the fifth question, that he was thereby induced to purchase the certificate of stock of said corporation which was issued to him? *A.* ——.

"(7) If your answer to the sixth question be 'Yes,' then answer this: In so relying on the truth of the representations specified in the sixth question, did plaintiff fail to exercise ordinary care to ascertain whether the same were true or false? *A.* ——.

"(8) If your answer to the seventh question be 'Yes,' then answer this: Would the exercise of ordinary care on plaintiff's

part before he paid for said stock certificate have disclosed to him the falsity of any of the representations specified in the sixth question? *A*. ——.

"(9) If your answer to the eighth question be 'Yes,' then answer this: Specify the representations whose falsity plaintiff would have discovered before he paid for said stock, if he had exercised ordinary care to make such discovery. *A*. The representations specified in subdivisions —— of the first question.

"(10) At the date when he paid therefor, what was the reasonable value of the share of stock purchased by plaintiff? *A*. $100.

"(11) If your answer to the second question be 'Yes,' then answer this: What would have been the reasonable value of said share at the date when plaintiff paid therefor, if the representations which your answers to the first question find to have been made, had all been substantially true? *A*. $125."

The plaintiff moved that the verdict be changed, that he be awarded judgment notwithstanding the verdict, and that he be granted a new trial. The court denied each of the motions of the plaintiff, and also a motion of the defendants to have the verdict changed, and ordered judgment dismissing the complaint upon the merits and allowing the defendants costs. This is an appeal from the judgment so awarded.

*E. S. Schmitz* and *F. F. Groelle,* for the appellant.

For the respondent *Carstens* there was a brief by *Healy & Joyce,* and oral argument by *John J. Healy.*

*Isaac Craite,* for the respondent *Lehmkuhl.*

SIEBECKER, J. The first exception urged pertains to the reception in evidence of statements made by Healy concerning a portion of the inventory of the stock of the co-operative enterprise without the written proofs being produced, and of *Lehmkuhl's* evidence of a reported statement of an employee to the effect that *Lehmkuhl's* presence at the session of the auditing committee was not desired by them. These statements are of such slight weight and importance that they can-

not be deemed to have been of consequence in the jury's deliberations on the case, and hence no substantial prejudice could result therefrom.

It is contended that the court erred in charging the jury and thereby prejudicially affected the appellant's rights, in that the court usurped the function of the jury by directing them what weight to give to evidence in the case, by resolving conflicts in the evidence, by directing the jury how such conflicts were to be decided, and by otherwise expressing opinions to the jury as to the credibility of witnesses and what evidence should be considered as controlling upon the issues, thus misleading the jury and usurping its functions. The charge covers twenty-nine pages of the printed case and its context shows that it is properly subject to criticism as being unnecessarily elaborate as to details, confusing in its effect, and in some of its parts as invading the province of the jury by communicating to them the court's opinion of the effect of the evidence on disputed issues of fact. Nor can we approve the charge in its treatment of the evidence by way of argumentation, which necessarily conveyed to the jury the court's personal view of the weight of the evidence, the credibility of witnesses, and the probative force of evidentiary facts. This practice has the inherent objection of tending to lead the court to invade the jury's function of determining the weight, probative effect, and sufficiency of the evidence, and what inferences of fact should be drawn from the evidence adduced. We cannot escape the conviction that the court in this case, in portions of its charge to the jury, invaded the functions of the jury in these respects. Nor can we approve the practice, in connection with a special verdict, of charging juries upon plain and clear issues of fact, such as are presented here, by such extended and argumentative instructions on the facts as was done upon this trial. Such practice fails to accomplish the object of directing the jury to the ultimate issues of fact for their determination, and is apt to confuse and mislead

them and thus operate prejudicially upon the rights of the parties. From a study of the record we cannot say that the verdict in this case should be disturbed on account of the court following this erroneous method of instructing the jury, for it does not appear that this error has affected the substantial rights of the appellant. An examination of the special verdict discloses that the jury negatived the charge that the defendants wilfully conspired to fraudulently sell plaintiff this stock for the benefit of the corporation, as charged in the complaint, and there is no finding that the plaintiff relied on any of the representations made by the defendants and was thereby induced to purchase the certificate of corporate stock here in question. The appellant raised no question of any insufficiency in this respect in the verdict rendered and made no special request for a finding thereon; hence it must be considered that the court under sec. 2858m, Stats. (Laws of 1907, ch. 346), found the fact against appellant's contention. It must follow that the court properly awarded the defendants judgment upon the ground that the facts found do not establish that the defendants practiced the fraud alleged on the plaintiff, because it does not appear that the plaintiff relied on any fraudulent representations of the defendants and was thereby induced to purchase the certificate of stock.

The form of the special verdict submitted compels us to call attention to it. It will be observed that the court framed questions which were designed to cover ultimate issues of fact presented by the pleadings, and then subdivided such questions into subsidiary inquiries. This was carried to an extent that led to inquiries upon mere disputes in the evidence bearing on the ultimate issues of fact raised by the pleadings. Such a practice is not in accord with the correct and approved method of framing special verdicts under the statute. It tends to confusion and prevents juries from determining under the evidence the ultimate issues presented by the pleadings, and hence is not the correct method of framing special

verdicts under the calls of the statute.     As stated in the head-note to *Mauch v. Hartford,* 112 Wis. 40, 87 N. W. 816:

"Only special questions, covering the issues made by the pleadings and controverted on the evidence, each so framed as to cover a single issue and admit of a direct answer, should be included in a special verdict."

*By the Court.*—Judgment affirmed.