JOHNSON, Respondent, vs. LAKE SUPERIOR TERMINAL & TRANSFER COMPANY, Appellant.

*September 9 — September 26, 1893.*

(1, 2) *Railroads: Injury to licensee on track: Duty to provide lookout, etc.: Contributory negligence: Court and jury.* (3) *New trial: Discretion.*

1. A railroad company which has licensed the use of its grounds and track by pedestrians for a way, is bound to provide for a careful lookout in the direction in which a train is moving, in places where people are liable or likely to be on the track. and to signal the approach of its cars to persons in positions of danger.

2. Whether the plaintiff in this case, who, as a licensee, was walking between the rails of defendant's track and was struck by a locomotive running backward in the same direction, was guilty of contributory negligence in not looking back oftener than he did, is *held,* upon the evidence. to have been a question for the jury.

3. Where there is evidence which tends to support the verdict, the granting or denying of a motion to set it aside as contrary to the evidence is a matter within the discretion of the trial court, and this court will not interfere unless such discretion has been abused or unless, as a matter of law, upon the entire case the verdict cannot be allowed to stand.

APPEAL from the Circuit Court for *Douglas* County.

The plaintiff brought his action against the defendant, a railroad corporation engaged in a general switching and transfer business at West Superior, to recover damages for injuries caused to the plaintiff by the alleged negligence of the defendant while the plaintiff was walking on its track, rendering the amputation of the plaintiff's left foot necessary; the specific charge of negligence being that while the plaintiff, as licensee, was walking on the track, an engine of the defendant backed down on him without giving him any warning, and that the persons in charge of the engine failed to keep a lookout for persons on the track, though said track was and had been used for a long time by pedes-

trians in going to and returning from various points, and with the assent of the defendant. The jury found a spe-cial verdict to the effect that the people, for a considerable length of time prior to the accident, had been accustomed to travel on the defendant's tracks, between the rails, at the point in question, to the knowledge and with the ac-quiescence of the defendant in such use of its track by the public; that there was a want of ordinary care on the part of the defendant's servants in charge of the engine at the time the plaintiff was injured, which was the proximate cause of the injury; and that there was no want of ordi-nary care on the part of the plaintiff, contributing thereto,— and assessed the plaintiff's damages at $6,000, upon which he had judgment, from which the defendant appeals.

The principal contention of the defendant is that the circuit court erred in not directing the jury, as requested, to find that the proximate cause of the accident was the negligence of the plaintiff, and that the court erred in not granting a new trial. The evidence of negligence on the part of the defendant, in not keeping a lookout, and in not ringing a bell or signaling the approach of the engine, was such as to clearly require the submission of that ques-tion to the jury, and so, too, as to the question of license and acquiescence by the defendant in the passing and re-passing of the public over and along the switch tracks in question, and showed that various parties, mainly laborers and members of their families, were accustomed to come upon these tracks at different points, and walk on and along the tracks to various other points,— so much so that upon the track near where the plaintiff was injured there was quite a path worn between the rails by pedestrians, and that the ground on either side was incumbered so that it was inconvenient to walk outside of the track in very many places.

The principal track extended northerly from Second

street, along Tower Bay slip, across North First street, to
the point where the plaintiff was injured, a distance of 1,050
feet, and from thence north to the smelting works, a fur-
ther distance of more than 1,100 feet, and the track was
open to full view from 150 feet south of where the injury
occurred to the north end of it, and was without material
grade, though there were a few buildings along the track
in the neighborhood of the point where the injury occurred.

The plaintiff was a common laborer, familiar with the
ground and location of the tracks, and familiar with the
manner in which the premises, which were the private
property of the defendant, were used.   On the morning in
question he went down Tower Bay slip, along the track, to
a point where a boat was unloading, in quest of employ-
ment, but failed to get any.   Then he went back upon the
track, and was walking south on it towards the south end
of the Adamant Works, when he met the defendant's train,
consisting of a locomotive and tender and about six freight
cars, passing on its way north, and he stepped off the track,
and it passed him.   Shortly after he stepped back upon the
track, when he looked up towards the north, in the direc-
tion of the engine, and saw that it was about 300 feet from
him, and apparently still going north, and thought it was
going up to the smelting works, which is a considerable·
distance further to the north, or at the end of the track.
He stepped back upon the track, and continued his journey
towards the south.   Near the point where he stood there
was a switch and a side track 480 feet long.   The plaintiff
testified, in substance, that when he started to return south
upon the track the train was about 300 feet north of him,
and he thought it was still going further north; that he is
not sure whether it was on the main switch track or side
track; that the locomotive was at the south end, pushing
it north, with its head in that direction, and its rear end
towards him; that he looked to see if the engine had stopped

when he stepped on the track to go south, and walked right down the middle of the track about 75 or 100 feet to where there was a small pile of lumber, when he looked around and saw the train was close upon him; that he then tried to jump off the track, but before he got his left foot over the wheels struck him, and cut his foot off; that he was going south, the same way the train was, with his back towards it; that he was expecting the train might come back, so he was listening to hear whether the bell rung or not, and that is the reason he knows it did not ring; that the switch engine had a tank on the back of it, and a footboard or place to stand, and a railing for men to take hold of. The engineer told him when the train stopped, about 142 feet south of where he was injured, that he did not see him.

The switchman having charge of the crew testified that he was standing on the footboard between the engine and the cars at the time, and did not see the plaintiff; that the engineer could not see a man on the track back of him, on account of the tank, the top of which is seven or eight feet from the ground, unless he was twenty-five feet away; that the train was not going more than three or four miles an hour at the time of the accident. Another of the crew testified that he did not see the plaintiff before he was hurt. This witness did not know whether the bell was rung or not, but the fireman testified that he rang the bell. There was nothing to obstruct the view from a point 140 feet south of where the plaintiff was injured to the north end of the tracks. No one saw the plaintiff until after he was hurt, and there was no lookout on the footboard of the tank. The switch to the side track is eighty-seven feet north of the place of the accident, and a little south of where the plaintiff testified he got on the track to walk south, and the engine was 300 feet north of there at the time, going, as he supposed, to the smelting works, near

the north end of the track. But there was evidence tend-
ing to show that the engine did not go north of this switch,
and the testimony of the plaintiff may properly justify the
inference that the train came south at a much greater rate
of speed than four miles an hour.

Exception was taken by defendant because the court in-
structed the jury that, "in backing the engine, it was the
duty of the defendant's servants to keep a lookout in the
direction the engine was moving, and use ordinary care to
signal the approach of the engine to any person it had rea-
son to expect might probably be walking on the track, and
to be ready to give such signal as the necessity therefor
should arise."

For the appellant there was a brief by *Butler & Vinje*,
attorneys, and *Tilden R. Selmes*, of counsel, and oral argu-
ment by *Mr. Selmes*. They contended, *inter alia*, that the
contributory negligence of the plaintiff was the proximate
cause of the accident. A person walking upon a railroad
track must take notice that trains are liable to be passing
at any time, and if he has reason to expect a train it inten-
sifies his negligence if he fails to look and listen. If he
goes upon a track while used for switching purposes, he
should exercise every precaution before going on the track
and should continually look and listen while on the track.
This being the rule where the track is on a public high-
way, giving the pedestrian equal rights with the railroad,
how much more must it be so where the traveler is a mere
licensee upon yard tracks used continually for switching
purposes, and where the licensee assumes the risks incident
to the business carried on and the manner in which it is
conducted. *Richards v. C., St. P. & K. C. R. Co.* 81 Iowa,
426; *Olson v. C., M. & St. P. R. Co.* 81 Wis. 41; *Flynn v.
Eastern R. of Minn.* 83 id. 238; *Schmolze v. C., M. & St.
P. R. Co.* id. 659; *Graf v. C. & N. W. R. Co.* 94 Mich. 579;
*Railroad Co. v. Houston,* 95 U. S. 697; *Maxey v. Mo. Pac.*

*R. Co.* 113 Mo. 1; *Atchison, T. & S. F. R. Co. v. Priest*, 50 Kan. 16; *Marland v. P. & L. E. R. Co.* 123 Pa. St. 487; *Moore v. P., W. & B. R. Co.* 108 id. 349; *Penn. R. Co. v. Bell*, 122 id. 58; *Taylor v. D. & H. Canal Co.* 113 id. 162; *Myers v. B. & O. R. Co.* 150 id. 386.

For the respondent there was a brief by *McHugh, Lyons & McIntosh*, attorneys, and *Spooner, Sanborn & Kerr*, of counsel, and oral argument by *A. L. Sanborn.* They argued, among other things, that defendant had notice that large numbers of people were in the habit of using this track as a pathway, and it was its duty to provide a careful lookout in the direction the train was moving. The train was being recklessly pushed down the track, at an unlawful rate of speed, without the bell being rung or the whistle blown, or any lookout of any kind observed. Under such circumstances the company was guilty of gross negligence. *Whalen v. C. & N. W. R. Co.* 75 Wis. 659; *Bohan v. M., L. S. & W. R. Co.* 58 id. 30; *Heddles v. C. & N. W. R. Co.* 74 id. 239; *S. C.* 77 id. 228; *Townley v. C., M. & St. P. R. Co.* 53 id. 634; *Butler v. M. & St. P. R. Co.* 28 id. 487; *Ewen v. C. & N. W. R. Co.* 38 id. 613; *Johnson v. C. & N. W. R. Co.* 56 id. 279; *Farley v. C., R. I. & P. R. Co.* 56 Iowa, 337; *Frick v. St. L., K. C. & N. R. Co.* 5 Mo. App. 435; *Cheney v. N. Y. C. & H. R. R. Co.* 16 Hun, 415; *Battishill v. Humphreys*, 64 Mich. 514. The plaintiff was a licensee and not a trespasser, and it was not unlawful for him to use the track as others had been accustomed to. use it. *Whalen v. C. & N. W. R. Co.* 75 Wis. 645; *Davis v. C. & N. W. R. Co.* 58 id. 646; *Hooker v. C., M. & St. P. R. Co.* 76 id. 542; *Townley v. C., M. & St. P. R. Co.* 53 id. 636; *Delaney v. M. & St. P. R. Co.* 33 id. 67; *Ill. Cent. R. Co. v. Hammer*, 72 Ill. 347; *Murphy v. C., R. I. & P. R. Co.* 45 Iowa, 661; *S. C.* 38 id. 539; *Harty v. Cent. R. Co.* 42 N. Y. 468; *Brown v. H. & St. J. R. Co.* 50 Mo. 461; *Kansas P. R. Co. v. Pointer*, 9 Kan. 620; *S. C.* 14 id. 38; *Kay v. Penn.*

*R. Co.* 65 Pa. St. 269; *Penn. R. Co. v. Lewis,* 79 id. 33; *Daley v. N. & W. R. Co.* 26 Conn. 591; *Dublin, W. & W. R. Co. v. Slattery,* 3 App. Cas. 1155.

PINNEY, J.  1. At the time the accident occurred the defendant was running its locomotive, attached to and drawing a train of five or six cars, rear end in front, so that the engineer and fireman were not able to keep a reasonably vigilant lookout along the track in the direction the train was moving,— a somewhat unusual method of operating the train, though quite common, perhaps, in switching yards,— and it afforded sufficient reason for keeping a lookout different from, and in addition to, that practiced by the engineer and fireman when the locomotive is run right end in front.  The train was being operated over the private premises of the defendant, but by its license and acquiescence, quite clearly proved, the public were in the habit, to a very considerable extent, of passing and repassing over and along the track and between the rails at the point where the injury occurred.  The company, by its license and acquiescence, had lost the right to treat persons so passing as trespassers, for whose safety it would be answerable only in case of gross negligence; and by repeated decisions in this state it is well settled that a railroad company must provide for a careful lookout in the direction in which the train is moving, in places where people are liable or likely to be on the track, and especially children.  The rule exists in the case of adults as well as children, and the failure to keep such lookout is negligence, as a matter of law.  The instruction excepted to was clearly justified by the evidence, which showed that practically no lookout was kept in the direction the train was moving, on account of the reversed position of the locomotive.  After having licensed the use of its grounds by pedestrians for a way, the defendant was not entitled to ignore their actual or

probable presence on the track, and operate its train accordingly. The changed condition growing out of the licensed use of its grounds and tracks devolved on it the duty of keeping a lookout and signaling the approach of its cars to persons in positions of danger. *Townley v. C., M. & St. P. R. Co.* 53 Wis. 634; *Davis v. C. & N. W. R. Co.* 58 Wis. 653; *Whalen v. C. & N. W. R. Co.* 75 Wis. 659, 662. The pedestrian passing and repassing along a track under such circumstances, it must be admitted, occupies a dangerous position; but he has a right to assume that the company will discharge its duty arising out of the circumstances and the relation which the parties occupy towards each other, and that it will not, by its negligence, expose him to, or inflict on him, any injury.

2. The question whether a verdict should have been directed for the defendant on the ground that the plaintiff was guilty of contributory negligence as a matter of law, or whether, under the evidence, it was a question of fact for the jury, is one of more difficulty. Generally, what is and what is not negligence is a question for the jury. It is not a fact to be testified to of itself, but a deduction or inference from the facts and circumstances in evidence. When the standard of duty is a shifting one, a jury must determine what it is, as well as find whether it has been complied with. If unbiased men would differ as to the inferences to be drawn from the facts and circumstances, then these inferences cannot be made without the intervention of a jury, although all the witnesses agree in their statements, or there be but one statement which is consistent throughout; and in all cases in which such inferences are in doubt, giving to the testimony the construction most favorable to the party charged therewith, the question of negligence is for the jury. *Valin v. M. & N. R. Co.* 82 Wis. 6; *Hill v. Fond du Lac*, 56 Wis. 242; *Nelson v. C., M. & St. P. R. Co.* 60 Wis. 323; *Langhoff v. M. & P. du C.*

*R. Co.* 19 Wis. 496. And many other cases might be cited in this and other courts to the same effect. The proof of contributory negligence, in order to warrant an absolute direction to find for the defendant, must be clear and decisive,— not leaving room for impartial and unbiased minds to arrive at any other conclusion.

Applying these familiar principles to the facts in evidence, and giving the facts the construction most favorable to the plaintiff, as we are bound to do, it is clear, we think, that the question of contributory negligence in this case was not one of law for the court, but one of fact for the jury. It cannot be said that there was an entire absence of care and caution on the part of the plaintiff. He did exercise certain care and precaution. It is said that he did not look and listen, did not employ the evidence of his eyes as well as his·ears, to avoid danger; and the absolute and rigid rule requiring a party about to cross or go upon the track to both look and listen in order to ascertain the presence or approach of a train is invoked. But the plaintiff knew by sight, and hearing as well, that the train was on the switch track, for he met it on its way north, and he supposed it was going up to the smelting works, quite a distance, at the end of the track. If it was not going at a greater rate than three or four miles an hour on its return south, can it be said, as a matter of law, that the plaintiff was guilty of negligence, in that he merely listened for the train, expecting it would return, and walked a distance of about ninety feet before he looked again, supposing and believing, as he says, that it was far up the track? When he last looked, he says it was at least 300 feet distant from him. Certainly, in walking south on the track, he could not be expected to keep his eyes constantly to the north, and upon the locomotive. To have done so might have exposed him to like injury in the opposite direction. The requirement to look and listen does not nec-

essarily mean that a party thus circumstanced must look all the time at the locomotive in question. The degree of care demanded by the situation would not necessarily require this, nor do we understand that the rule goes to any such extent, or that after the party has discovered and located the train he shall do more than exercise that degree of care and caution fairly indicated by the situation. The question of negligence thus ceased to be an absolute, and became a relative, one, in this case; and so the question was necessarily one for the jury to say whether he looked often enough, under all the circumstances, as he had understood and had observed them. Assuming that the locomotive was 300 feet north of him when he started south down the track, and that he traveled at a fair walk for twenty or thirty seconds without looking again, and if the train had started south when he saw it, it would have to run 390 feet before it could overtake and strike him, or at the rate of about eight miles an hour,— a rate believed to be unusual in doing switching,— yet he was all the time exercising some care and caution, by constantly listening and expecting to hear its bell. Had he any right to expect that the defendant would employ so high and unusual a rate of speed, in view of existing circumstances?

The case is distinguishable from *Schmolze v. C., M. & St. P. R. Co.* 83 Wis. 659, in that in that case the plaintiff exercised no care or caution whatever when he entered upon the track of the railway. The case of *Whalen v. C. & N. W. R. Co.* 75 Wis. 654, in which the question of the plaintiff's negligence was held to have been properly submitted to the jury, is in many respects similar to the present, but it was not decided in that case that if the plaintiff had been an adult the case ought not to have gone to the jury. Each case necessarily stands upon its own particular facts and circumstances, and the jury, who saw the plaintiff and heard his testimony and the testimony of other witnesses,

Johnson vs. Lake Superior Terminal & Transfer Co.

were best able to determine the degree of diligence which ought to have been required of the plaintiff in the present case, as well as the proper inferences to be drawn from the testimony. The evidence of negligence on the part of the plaintiff was not clear and decisive, not leaving room for impartial and unbiased minds to come to any other conclusion. For these reasons, and under well-settled rules, we think the question of contributory negligence was one of fact and properly left to the jury.

3. But little need be said in respect to the refusal of the court to set aside the verdict of the jury as being contrary to evidence. The granting or refusal to grant such a motion, where there is evidence which tends to support the verdict, as in this case, is a matter resting in the sound discretion of the trial court; and we cannot interfere unless such discretion has been abused, or where, as a matter of law, upon the entire case the verdict cannot be allowed to stand. In view of the fact that the trial court had advantages of judging whether, upon the whole case, justice had been done, which this court does not possess, the case which would induce this court to interfere with the decision of the circuit court overruling a motion for a new trial, resting in discretion, must be of a strong and exceptional character. The evidence does not furnish such a case.

It follows from these views that the judgment of the circuit court is correct and must be affirmed.

*By the Court.*—The judgment of the circuit court is affirmed.