HUPFER, Administrator, Respondent, vs. NATIONAL DISTILL-ING COMPANY, Appellant.

*April 4—April 22, 1902.*

*Negligence: Dangerous premises: Injury to person there on business: Evidence: Photographs.*

1. Plaintiff's intestate was upon the premises of defendant, a distilling company, to purchase slops, which were to be drawn from a large circular vat into his wagon. He was standing upon the platform of the vat for the purpose of stirring the slops therein, when the vat burst and he was scalded to death by its contents. Defendant had an employee whose duty it was to stir the slops, but it was a custom, known to and acquiesced in by defendant, for customers to stir them for themselves if they wished, and the deceased had repeatedly been allowed to do so. *Held*, that deceased, being where he was by defendant's permission and upon business for their mutual benefit, was not a mere licensee, and defendant was liable for his death if the dangerous condition of the vat was known to it or discoverable by the exercise of ordinary care.

2. Photographs of hoops claimed to have been upon the bursted vat are held to have been improperly admitted, because the evidence (discussed in the opinions) did not sufficiently identify the objects photographed as the hoops in question.

3. Such photographs, if they had been shown to represent correctly the hoops of the vat, would have tended to show that some of such hoops were, at the time of the accident, rusted to such an extent as to destroy or partially destroy their efficiency, and that such condition could readily have been discovered by the exercise of ordinary care; and would have supported a finding of the jury that defendant ought to have known of such defective condition of the hoops prior to the accident. [BARDEEN and MARSHALL, JJ., are of the opinion that, even if admissible, such photographs were not sufficient, as against the overwhelming evidence to the contrary, to sustain such a finding. MARSHALL, J., is further of the opinion that, even if the objects pictured had been properly identified, the photographs were not admissible as the *sole* evidence of the condition of the hoops, such fact being susceptible of better proof by the testimony of witnesses.]

APPEAL from a judgment of the superior court of Milwaukee county: J. C. LUDWIG, Judge. *Reversed.*

This is an action to recover damages for negligently causing the death of the plaintiff's intestate, Simon Hupfer, September 13, 1899. Aside from the formal parts, the complaint alleges, in effect, that on the day named Simon came to the defendant's distillery, as he had for some time been accustomed to do, for the purpose of purchasing and receiving slops for his cows, which slops were contained in a large circular tank about sixteen feet in diameter and raised about six feet above the ground, and drawn therefrom by a faucet at the bottom of the tank; that Simon drove his wagon under and by the side of the tank for the purpose of so filling his wagon with such slops; that without his knowledge or any warning to him, and through the carelessness and negligence of the defendant, the hoops which held the tank together had become rusted and weakened, so that the tank broke, and the contents thereof were precipitated upon Simon, scalding him in such a dangerous and shocking manner that he died about three hours afterwards.

The answer consists of admissions, denials, and counter allegations, to the effect that Simon refused to allow the de-

fendant's employees to stir the slops in the tank, but insisted upon being present at the tank and stirring the slops therein himself, and by his doing so his own carelessness and negligence contributed to his injury and death.

At the close of the trial the jury returned a special verdict, to the effect (1) that Simon Hupfer received injuries by the bursting of the defendant's slop vat, September 13, 1899, from which he died; (2) that the hoops on the vat at the time of the accident were rusted, so as to be defective and unfit for the purpose for which they were used; (3) that the defendant did not know of such defective condition of the hoops prior to the accident; (4) that the defendant in the exercise of ordinary care ought to have known of such defective condition of the hoops prior to the accident; (5) that such defective condition of the hoops was the proximate cause of the injury; (6) that September 13, 1899, it was a long-established custom for defendant's customers, desiring to purchase feed to be delivered from the vat in question, to stir the feed for themselves, if they desired to do so; (7) that such custom was known to, and acquiesced in by, the defendant; (8) that the defendant's customers, prior to the accident, did know that the defendant had provided a person whose duty it was to stir up the slop in the vat and deliver the same to the customers of the defendant; (9) that the deceased, prior to the accident, did know that the defendant had made it the duty of John Dardell to stir up the slop in the vat and deliver the same to the customers of the defendant; (10) that the defendant, prior to the accident, did repeatedly suffer the deceased to step upon the back platform and stir up the slop, and did suffer the deceased to do so because it feared to lose the custom of the deceased if it should forbid him; (11) that the deceased, in the exercise of ordinary care, ought not to have known of such defective condition of the hoops prior to the accident; (12) that the deceased was not guilty of a want of ordinary care which proximately contributed to the

injury; (13) that they assessed the plaintiff's damages at
$1,000.

From the judgment entered thereon for the amount stated,.
the defendant brings this appeal.

For the appellant there was a brief by *O'Connor, Schmitz,.
& Wild,* and oral argument by *A. J. Schmitz.* They argued,
among other things, that at the time of the accident the
deceased was a mere licensee to whom the defendant owed no
duty, and that the defendant is not liable in damages on ac-
count of his injury. *Cahill v. Layton,* 57 Wis. 600; *Truax v.
C., St. P., M. & O. R. Co.* 83 Wis. 547; *Gorr v. Mittlestaedt,*
96 Wis. 296; *Peake v. Buell,* 90 Wis. 508; *Dowd v. C., M. &
St. P. R. Co.* 84 Wis. 105; *Cole v. McKey,* 66 Wis. 500; 1
Thompson, Neg. sec. 5, p. 307; *Vanderbeck v. Hendry,* 34
N. J. Law, 467; *Reardon v. Thompson,* 149 Mass. 267;
*Bennett v. L. & N. R. Co.* 102 U. S. 577; *Parker v. Portland
P. Co.* 69 Me. 173; *Gaffney v. Brown,* 23 N. E. 233, 150
Mass. 479; *Trask v. Shotwell,* 41 Minn. 66, 42 N. W. 699;
*Zoebisch v. Tarbell,* 87 Am. Dec. 660, 10 Allen, 385; *Davies
v. Central Cong. Soc.* 129 Mass. 371; *Johnson v. B. & L. R.
Co.* 125 Mass. 79; *Severy v. Nickerson,* 120 Mass. 306;
*Pierce v. Whitcomb,* 21 Am. Rep. 120; *Sweeney v. O. C. &
N. R. Co.* 10 Allen, 368; Shearm. & Redf. Neg. (5th ed.),
§ 705; Buswell, Pers. Inj. § 93; *Ill. Cent. R. Co. v. Griffin,*
80 Fed. 280; *Barker v. Boston E. L. Co.* 178 Mass. 503, 60
N. E. 2; *Weldon v. P., W. & B. R. Co.* 2 Penn. (Del.) 1, 43
Atl. 95; *Tully v. P., W. & B. R. Co.* 2 Penn. (Del.) 537, 50
Atl. 95.

For the respondent there was a brief by *Lindley Collins*
and *Joseph B. Doe,* and oral argument by *Mr. Doe.*

CASSODAY, C. J. 1. It is contended that the deceased was,.
at the time and place of the injury, at most a mere licensee,.
to whom the defendant owed no duty. It is true that the de-
fendant had in its employ at the time one John Dardell,.

whose special duty, among other things, was to stir up the slop in the vat and deliver the same to the defendant's customers. By the eighth and ninth findings the jury found that prior to the accident the deceased and the defendant's other customers knew that such were the duties of John Dardell. But by the sixth, seventh, and tenth findings, the jury also found that at the time of the accident it had long been an established custom for the defendant's customers, desiring to purchase such slops, to stir the same for themselves, if they desired to do so; and that such custom was known to and acquiesced in by the defendant; and that prior to the accident the defendant repeatedly suffered the deceased to step upon the back platform and stir up the slop, because it feared to lose his custom if he should be forbidden. John Dardell testified to the effect that he told the defendant's secretary that if some of the customers were not allowed to stir the slops themselves such customers would not take them; that the secretary told him not to drive customers away, but that he would rather he would stir the slops himself; that he had known the deceased for three years; that in the winter he came for slops almost every day, but seldom in the summer; that he often told the deceased that his duties required him to stir the slops, but that the deceased always stirred the slops himself; that by doing so he would get the thick slop, while other customers, who did not stir it themselves, would get thinner slop; that he knew that the deceased would not take the slop unless he stirred it himself, and so he let him stir the slop and fill his wagon rather than lose him as a customer; and that he regarded that as business.

Upon such findings and testimony, can we hold that the deceased was a mere licensee within the authorities? *Townley v. C., M. & St. P. R. Co.* 53 Wis. 626, 11 N. W. 55; *Cahill v. Layton,* 57 Wis. 606, 617, 16 N. W. 1; *Truax v. C., St. P., M. & O. R. Co.* 83 Wis. 547, 53 N. W. 842; *Johnson v. Lake Superior T. & T. Co.* 86 Wis. 64, 56 N. W. 161;

*Mason v. C., St. P., M. & O. R. Co.* 89 Wis. 151, 61 N. W. 300; *Gorr v. Mittlestaedt,* 96 Wis. 298, 71 N. W. 656. In one of the elementary works cited by counsel for the defendant, the rule applicable is stated thus:

"If a person enters upon premises on business to be transacted with the owner or occupant thereof, or by the procurement of the owner or occupant, and, being himself in the exercise of due care, is injured by reason of the unsafe condition of the premises or the approaches thereto, such unsafe condition being known, or such as ought to have been known, to the owner or occupant, the latter will be answerable in damages for such injuries." Buswell, Pers. Inj. § 66, citing numerous cases.

Among the cases cited in support of the proposition are the following: *Donaldson v. Wilson,* 60 Mich. 86, 26 N. W. 842; *Samuelson v. Cleveland I. M. Co.* 49 Mich. 164, 13 N. W. 499; *Carleton v. Franconia I. & S. Co.* 99 Mass. 216; *Bennett v. Railroad Co.* 102 U. S. 577, 584, 585. In the first of these cases it was held that "a landowner is liable to respond in damages to one who, using due care, comes upon his premises at his invitation or inducement, express or implied, on any business to be transacted with or permitted by him, for injuries sustained by reason of the unsafe condition of such premises, known to him, and which he has suffered negligently to exist, but of which the injured party has no knowledge or notice." In the last it is said, quoting from an author, that "the principle appears to be that invitation is inferred where there is a common interest or mutual advantage, while a license is inferred where the object is the mere pleasure or benefit of the person using it." Similar views are expressed in Mr. Thompson's late Commentaries on the Law of Negligence (vol. 1, § 968), citing numerous cases in support of the rule. We must hold that, under the findings of the jury, the deceased cannot be regarded as a mere licensee, but that he was there on business for the mutual benefit

of himself and the defendant; or, in other words, by invitation. There is evidence tending to support such findings.

2. By the third and fourth findings the jury found, in effect, that the defendant did not know of the defective condition of the hoops prior to the accident, but that it ought to have known of such defect prior to the accident. It is claimed that the evidence is insufficient to support this last finding. It appears that the tank was constructed in 1894; that the average life of such a tank used as that was without necessitating repairs was ten years or more; and that that tank was inspected and found in good condition in June or July prior to the accident. Of course, if the defect was latent and unknown to the defendant, and undiscoverable by the exercise of ordinary care on the part of the defendant, then there would be no liability. *Smith v. C., M. & St. P. R. Co.* 42 Wis. 520; *Morrison v. Phillips & C. C. Co.* 44 Wis. 405; *Spille v. Wis. B. & I. Co.* 105 Wis. 340, 81 N. W. 397. But if the photographs were properly admissible in evidence, then there was evidence tending to prove that some of the hoops on the tank were, at the time of the injury, rusted to such an extent as to destroy or partially destroy the efficiency of such hoops, and that such condition could readily have been discovered by the exercise of ordinary care on the part of the defendant.

3. The defendant's secretary testified to the effect that the photographs correctly represented the location of the tank, the office building, the roadway, and the plant. The photographer testified to the effect that Exhibit C was a correct representation of the hoops as they were September 18, 1899,—five days after the accident; that they were rusty, with some slops or grain on them; that he took Exhibits D and E on the same day; that they represent the hoops that came from the vat that burst, and were in the yard where he took photographs of the whole lot; that they represent parts of

the same lot as Exhibit C, and taken at the same time; that when he took Exhibit D he noticed that there were rust spots, or that the hoops were rusted through, and in order to show the holes he took pieces of paper and stuck them on the back, so that the holes would appear in the picture; that the other white spots represent slops or grain; that the spots marked round with ink represent holes, and the others slops; that Exhibits D and E correctly represent what they were intended to represent; that Exhibit E shows how far the hoops were eaten through by rust; that they were in the back yard, where there was nothing but rubbish and weeds, where he took the photographs. The defendant's engineer testified to the effect that after the explosion the hoops from that tank were placed back in the yard, in the distillery grounds back of the old warehouse; that Exhibit C was the back yard and about the place where he directed the hoops to be put; that they were placed there, he guessed, about three days after the accident; that he saw them placed there personally; that there were some hoops there at the time; that they had more than one slop vat, but only one that burst about that time, and the hoops of which had been removed there within a few days; but that he did not know whether the hoops shown in the photograph came from the vat in question; that he did not point out those hoops to the photographer; that if he remembered correctly he showed one of the attorneys for the plaintiff where those hoops were a few days after the accident; that he did show some one the hoops that came from the vat, within a few days after the accident, but did not show them to more than one party where they were, nor to any one with a camera. Upon such evidence the three photographs mentioned were admitted in evidence, against the objection that the hoops shown in the photographs had not been identified as the hoops which came from the exploded vat in question. After careful consideration we are forced to the conclusion

that such objection was well taken and was improperly over-
ruled. This court has recently and repeatedly considered the
question of admitting photographs in evidence, and the effect
to be given to them as evidence when admitted. *Baxter v.
C. & N. W. R. Co.* 104 Wis. 307, 324, 325, 80 N. W. 644;
*Selleck v. Janesville,* 104 Wis. 570, 574, 575, 80 N. W. 944;
*Mauch v. Hartford,* 112 Wis. 40, 48–50, 87 N. W. 816, 819,
820. It is unnecessary to add anything here to the discus-
sion.

Other questions suggested do not seem to be of sufficient
importance to call for special consideration.

*By the Court.*—The judgment of the superior court of
Milwaukee county is reversed, and the cause is remanded for
a new trial.


BARDEEN, J. The relation between the deceased and de-
fendant was more than that of a *mere* licensee. The defend-
ant owed him the duty of active vigilance to the extent of
using ordinary care in discovering and informing him of dan-
gers. The jury found that the defendant did not know of
the defective condition of the hoops on the vat, but that in
the exercise of ordinary care it ought to have known of their
condition prior to the accident. I think the evidence is over-
whelmingly against this last finding. The undisputed evi-
dence is that the vat was built in 1894; that the average life
of such structures was ten years; that the materials of which
this vat was constructed were first class; that it had been
painted with mineral paint at the time it was set up, and at
least once since that time; and that it was carefully inspected
in June or July prior to the accident, and showed no appear-
ance of rust or defects. Admitting that the photographs were
properly admissible in evidence, they were not sufficient, in
my judgment, to overcome the force of opposing evidence.
To allow a recovery on the evidence in this case is equivalent
to making the defendant an insurer.

MARSHALL, J.   I agree that the judgment should be re-
versed.   This personal opinion is written, in part because it
seems that the opinion of the court does not make the grounds
for the decision rendered sufficiently plain to prevent mis-
conception on some points, and in part because my views are
not in harmony therewith.   I understand the court holds that
it follows as a matter of law, from the findings of the jury
to the effect that the deceased was engaged in a business trans-
action with the appellant when injured, at a place on the
latter's premises where he was permitted to be in the pursuit
thereof, that he was not a mere licensee; that though he was
not, strictly speaking, an invitee as to the particular place he
was in, since he was permitted to be there and it pertained
to the business in which he and the respondent were inter-
ested, his status was at least that of a licensee coupled with a
mutual interest of licensee and licensor, not that of a mere
licensee, and that such relation carried with it an implied
assurance that the place was free from danger discoverable by
the exercise of ordinary care.   In other words, that the license,
being coupled with a business relation, so far as legal rights
were concerned, was equivalent to an invitation.   There is
abundance of authority to support that view, but I do not
understand that it includes the cases cited by the court.   They
are, in the main at least, cases of liability to a mere licensee.
To point only to such authorities to support the decision here,
it seems, is very misleading,—so much so as to almost cer-
tainly lead to error by trial courts.   In them the element of
business relation, generally, distinguishing a mere licensee
from a licensee or invitee, was absent, and the liability was
sustained upon the ground that one cannot justly set a trap
even for a mere licensee, or conduct his business regardless
of the license granted;—upon the doctrine that if a railroad
company permits, merely by not objecting, persons to habit-
ually walk upon its tracks where there is no highway, and to
do so to such an extent as to render it probable that pedes-

trians may be in the pathway of an approaching train at any time, it should keep a lookout from trains approaching such place and signal such approach when that seems reasonably necessary to warn such pedestrians of its presence. The extent to which that doctrine has been carried by this court is not in entire harmony with authorities elsewhere. Elliott, Railroads, §§ 1251, 1252.

There is a broad difference between a trespasser and a mere licensee; also between a licensee and a mere licensee, as the terms are used in the authorities. A trespasser is a wrong-doer,—one who acts in defiance of or regardless of the rights of another. Let that other give permission to do the act, he having no interest therein himself, directly or indirectly, and the trespasser becomes a mere licensee. Add the element of mutual interest or business relation of some kind, with or without advantage to the owner of the property, and the mere license becomes a license or invitation with a suggestion or assurance of safety, according to circumstances. To illustrate: A railroad company prepares a walk for its passengers to use in approaching to or departing from its trains. Such use is said to be by invitation. The preparation of the path is a suggestion to patrons of the road to approach and depart from trains by that particular way, and an assurance that it is reasonably safe to do so. Persons using a different way to approach or depart from trains customarily, with the knowledge of the company and without its protest, do so without any element of invitation, strictly speaking. There is rather an invitation not to use it, plainly suggested by the specially prepared way. The permissive use of the unprepared way, by itself, constitutes but a bare license, as the term is commonly used. The added element of business relation between licensee and licensor increases the degree of duty on the part of the licensor from that due to a trespasser or mere licensee to that due to an invitee, though there is no

implied suggestion to go outside the prepared way, hence, strictly, no implied invitation to do so. In that we observe all the elements present in this case as indicated by the verdict of the jury, showing as a matter of law that the deceased was not a mere licensee; nor was he, strictly speaking, an invitee, but he was a licensee with the added element of business relation between licensee and licensor. The duty to him in such circumstances, however, under the authorities, was substantially the same as that due to an invitee, not that due to a person circumstanced as were the plaintiffs in the cases cited.

*Johnson v. Lake Superior T. & T. Co.* 86 Wis. 64, 56 N. W. 161, turned on the duty of a railway company to a person walking upon its track, where pedestrians were accustomed to travel by permission of the company and might, under the circumstances, be reasonably expected to be at any time. It was said that he was not a mere trespasser, but it was not intimated that he could be regarded as occupying, in any sense, defendant's premises by invitation. In *Cahill v. Layton,* 57 Wis. 600, 16 N. W. 1, another case cited to support the ruling here, the deceased was a licensee without the element of business relation with the licensor, in every sense a mere licensee, and it was held that bare permission by one person to another to use his premises for any purpose does not carry with it a duty to maintain the premises in a reasonably safe condition for the permitted use. The court there drew a distinction between mere omission to inform a bare licensee of danger in his way, and acts on the part of a licensor rendering enjoyment of the license dangerous, there being breach of duty in the former, but not in the latter. The idea is that expressed in authorities quite generally, that one cannot be actively negligent toward a mere licensee. It is said that much confusion exists in American cases, partly by failure to distinguish between mere passive and active conduct in respect to a mere licensee; that while such a licensee

is bound to enjoy his license upon the premises over which his
license extends as he finds them, the licensor owes him a duty,
while the right of enjoyment exists, not to actively render it
dangerous. *Bennett v. Railroad Co.* 102 U. S. 577; *Ellsworth
v. Metheney,* 44 C. C. A. 484, 104 Fed. 119; *Felton v. Au-
brey,* 20 C. C. A. 436, 74 Fed. 350.

From what has been said it will be seen that appellant's
contention that the verdict of the jury and the evidence do
not show that it was under any duty of active vigilance to
discover those things that were discoverable by the exercise
of ordinary care to that end, and to have informed deceased
thereof, because he was only a licensee—was not in the place
of danger by invitation,—is not satisfactorily answered by
pointing to the cases holding that a licensor owes a duty to his
mere licensee not to render the enjoyment of his license dan-
gerous by active negligence, as by running a railway train re-
gardless of the probability of the presence of persons on the
track where it has been customarily used as a traveled way.
No active negligence is claimed in this case. Breach of a
duty to be actively vigilant to discover dangers that were
discoverable by the exercise of ordinary care, and to inform
the licensee thereof, is claimed. If the sole test of liability
were whether deceased was in the place of danger by invita-
tion, strictly speaking, either express or implied, the result
would necessarily be in favor of the defendant. There is
nothing in the evidence to suggest such invitation, but there
is ample evidence to show permission. The test of whether
the verdict, on its face, shows breach of duty to be actively
vigilant is whether the status of the deceased in respect to
appellant was other than a trespasser or bare, or mere, li-
censee. If he was neither because of the relations between
the two, it is immaterial whether he was in the place of dan-
ger by permission or by invitation, strictly so called. Counsel
for appellant brought this appeal on the theory that if the
deceased was not in such place by implied suggestion, he

was necessarily a bare licensee. That is wrong. Suggestion, strictly speaking, to go or come into the place, is essential to invitation, not to permission. But where permission, without such suggestion, is coupled with the element that creates the duty of active vigilance as regards the safety of a visitor by invitation, the permission is a legal equivalent to invitation, because it carries with it a similar suggestion of reasonable safety.

If it were necessary much authority could be produced to support the foregoing proposition. I will refer to them but briefly. One of the most satisfactory decisions in the books, as regards the particular circumstances of the case before us, is *Holmes v. N. E. R. Co.* (1869) L. R. 4 Exch. 254. The plaintiff there was injured while unloading coal at the defendant's track, the coal having been shipped over its line. There was a usual and provided way for conducting the unloading operations. Plaintiff, being unwilling to wait for his turn to be accommodated in such way, which was to first shunt the coal from the car into a cell by the side of the track and then draw therefrom, informed the station master that he would take some coal for immediate use directly from the car. That required him to mount the car. He was permitted to do so by mere silence of the master with knowledge of the operation. After removing the coal plaintiff descended from the car to a flagged way along which patrons were accustomed to walk in voluntarily assisting in the unloading operations in the usual way. In doing so he stepped upon a loose flag, of which the defendant knew or ought to have known, and was injured. The defendant claimed that the plaintiff was a mere licensee and could not, therefore, legally charge the former with actionable negligence, since it did not wilfully or wantonly injure him. In defining the plaintiff's status, CHANNELL, B., said:

"Where a person is a mere licensee he has no cause of action on account of dangers existing in the place he is per-

mitted to enter. In one sense the plaintiff was a licensee, but he was not a *mere* licensee, and the word 'mere' has a very qualifying operation; . . . and this prevents the case from being that of one who is 'a mere licensee."

CLEASBY, B., said, in effect, that the mere fact that the ordinary way of unloading the coal was departed from was not material to the defendant's duty to the plaintiff, since the way chosen by the latter was known and assented to by the former; and further: "The question of a mere license does not arise; for as soon as you introduce the element of business, which has its exigencies and its necessities, all idea of mere voluntariness vanishes." KELLY, C. B., speaking for the court in chief, said, in substance, that since the conduct of the plaintiff was in pursuit of business relations with the defendant, the permission, by not objecting, for the former to depart from the usual way of unloading the coal, made the latter responsible for the safety of the way chosen, to the same extent as that of the usual way. In *Bennett v. Railroad Co.* 102 U. S. 577, the distinction is clearly recognized between a mere licensee and an invitee in the technical sense, or one in the broad sense of including all persons entering upon the premises of another in the transaction of business with him by some other than the ordinary and suggested way, but one permitted and ordinarily used. It is held that in each of the latter situations there is an implied assurance of safety as regards all dangers known to the proprietor or discoverable by the exercise of ordinary care. Elliott, Railroads, §§ 1248, 1249, points out the same distinctions; and that while invitation implies license, license does not necessarily imply invitation; that mere sufferance does not constitute license, nor license invitation. Where there is mere permission by the occupier of property to another to come upon it, there being no mutuality of interest in the subject to which the latter's visit relates, the visitor is a mere licensee. Add the omitted element, and he is a licensee and an invitee. Pursuing the author's line of reasoning, we should say: Add the further

element of proceeding, while on the premises by invitation, beyond the region of suggestion, but by permission, the business relation still continuing and the visitor acting in pursuit thereof, and there is license implying assurance of safety so far as legal rights are concerned—invitation, so far as legal liabilities are concerned,—though that element, in the technical sense, is absent.

From what has been said it will be seen that the deceased, according to the verdict, was not a mere licensee, nor was he engaged in manipulating the contents of the tank when the accident occurred by implied suggestion essential to invitation in the general sense of the term; but he was so engaged by the assent of the defendant essential to license, and was lured into the place of danger by reason of his business with appellant. That carried with it legal responsibility for the safety of such place as regards dangers known or discoverable by the exercise of ordinary care. There was the same implied assurance of safety as there would have been if it had been part of the regular duties expected of customers to aid in delivering the subject of the deal between the parties, to do as the deceased was doing when the accident occurred. In this respect the case is precisely like the English case from which we have quoted at considerable length.

In reaching the conclusion as to whether the photographs were properly admitted in evidence, two propositions were considered: first, whether the objects represented in the photographs were sufficiently identified as being the remnants of the hoops which came from the vat, to render the pictures competent evidence; second, whether the purpose of the admission of the photographs was legitimate, such purpose being to prove the substantive fact of the defective condition of the hoops, no other evidence being offered on the subject by respondent. As I understand the result, the court decided the first proposition in favor of appellant, and the second in favor of respondent, holding that the ruling of the court below ad-

mitting the pictures in evidence was wrong because of insufficient proof that they represented the alleged defective condition of the hoops; but that if such proof had been sufficient it would have been competent to establish their faulty condition by the photographs alone. The legal standard of certainty by which the evidence of identification should be tested is not stated, and the substance of such evidence, found in the record, is so given as to lead to the inference, I fear, that it is held insufficient because not substantially all one way—not sufficient to establish the fact of identity to a reasonable certainty, leaving no duty whatever for the jury to perform on the question of whether the photographer found the right hoops or not. No reason is given in support of the decision on the second proposition, other than by pointing to *Baxter v. C. & N. W. R. Co.* 104 Wis. 307, 324, 80 N. W. 644; *Selleck v. Janesville,* 104 Wis. 570, 80 N. W. 944, and *Mauch v. Hartford,* 112 Wis. 48, 50, 87 N. W. 816, which do not seem to cover the subject. For the reasons stated, I feel called upon to express my personal opinion in regard to such matters.

I will first treat the last subject above mentioned. In the *Baxter* and *Selleck Cases* the photographs were used to aid the jury in better understanding evidence given from the mouths of witnesses as to the condition of the things pictorially represented. In the *Mauch Case* the photograph, an X-ray picture, was used to show the condition of the object represented therein, there being no other way by which definite evidence in regard thereto could be produced. In other words, it was held to be the best evidence the nature of the case was susceptible of. Here the situation is very different. The condition of the hoops was a subject of easy proof in the usual way. All the cases cited and all authority on the subject are to the effect that photographs are not admissible in evidence for all purposes. As a rule they are to be used to aid the jury in understanding and coming to a proper conclusion upon other evidence. No court, so far as I know, has

gone so far as to hold that photographs can be used as the sole means of establishing essential facts which are susceptible of proof, and are commonly proved, in judicial proceedings, by sworn testimony given by witnesses upon the stand. My study of the subject so persuades me that the decision goes too far, that I must dissent therefrom.

In *Baxter v. C. & N. W. R. Co.* the court said there are limits upon the use of photographs as evidence, and there must be in each case some substantial, legitimate reason for a resort to such means of presenting facts to the jury instead of relying upon the usual methods. It was further there said, in harmony with standard text writers and many cases cited, that photographs may be used, "to identify persons, places and things, to exhibit particular locations or objects where it is important that the jury should have a clear idea of the same, and the photographs will better show the situation than the testimony of witnesses, and where the testimony of witnesses will be better understood by the use of photographs, and to detect forgeries, and to prove documents in cases where originals cannot be readily produced." Obviously, none of those purposes fits this case. The photographs were not used to aid the jury in understanding the evidence of witnesses, or to show, better than could have been shown by the evidence of witnesses, the condition of the hoops. Such condition could have been gone into in detail by the examination of witnesses upon the stand and the exercise of the right of cross-examination, so as to elucidate the truth in a much more satisfactory way than by merely putting the pictures in evidence. Certainly, unless we are prepared to remove all limitations upon the use of photographs, the limit was passed in this case, even conceding, for the purposes of the point, that the things pictured were properly identified; for no reason whatever, as it seems, can be assigned to support their use, except that respondent had no other evidence. That is not a legitimate reason, since the fact involved was susceptible of better proof in

the ordinary way, as we have indicated. If all limitations upon the use of photographs are removed, we will have cases presented entirely by pictorial methods, regardless of the facility for proving the facts in issue by oral evidence. No such practice has yet been established. *Mauch v. Hartford, supra,* goes as far as any case in upholding the use of photographic pictures to prove, by them alone, essential facts. `The court there, in recognition of the doctrine that some legitimate reason is necessary to warrant such use, assigned as a sufficient reason for that case, as before indicated, that the X-ray photograph was the only means of establishing the fact to which it related, that the nature of the case was susceptible of.

Now a few words on the proposition as to whether the objects photographed were satisfactorily identified as the broken hoops that came from the vat, and why I regard the opinion of the court liable to mislead as to the legal test of the sufficiency of the evidence on the question of competency. What facts are necessary to competency is purely matter of law for the court to determine. The existence or nonexistence of such facts is also primarily a question for solution by the court on evidence. Such evidence, if true, should be sufficient in legal effect to establish such facts. It should be sufficiently persuasive to convince the judicial mind of a fair probability of its truthfulness. In case of conflicting probabilities as to such truthfulness, creating fair doubt on that point, the question involved is one of credibility. That is distinct from the element of competency. Probability of the truthfulness warrants a decision in favor of the latter element, while the evidentiary effect still waits upon the determination of the jury on the question of credibility. Best, Ev. (Intern. ed.), § 132. The conclusion reached by the trial court is as binding on the reviewing court as the verdict of the jury on an issuable fact in the case. That is, it is regarded in such court as a verity unless wrong beyond reasonable controversy. *Emery v. State,* 101 Wis. 627, 648, 78 N. W. 145. Applying that test to the

evidence of identity of the hoops photographed as being the ones that came from the vat, we must be able to say that it is entirely insufficient, in any reasonable view of .it, to sustain the trial court's decision, or that decision should not be disturbed. We cannot say that, from the synopsis of the evidence given in the court's opinion. It starts out by saying that .the photographer testified that the pictures represent correctly the hoops as they were September 18, 1899, five days after the accident. In that we have a distinct and clear declaration that the pictures show the hoops that came from the vat. The language of the witness, however, was as follows:: "This picture . . . is a correct representation of the hoops which they represent, as they were on the 18th of September, 1899." In that, there is no attempt to state that the hoops photographed are the ones that came from the vat. There is simply a statement that the picture correctly represents the objects photographed. But later the witness said, as indicated in the opinion of the court: The photographs "represent the hoops that came from the vat·that burst, and were in the yard where I photographed, where I took a photograph of a whole lot of them, and those here in parts." There is positive identity of the alleged defective hoops as the ones shown in the picture. It was not impaired by anything further said by the witness on his direct examination. The pictures were offered and received in evidence before he was cross-examined, and without any request for the privilege of cross-examination before the question of competency was submitted for decision. If it were not for evidence given by the photographer thereafter, to which no reference is made in the opinion of the court, it would seem that the decision of the trial court could not be disturbed. He said on cross-examination, immediately after the photographs were admitted, that he had no knowledge whatever as to whether the hoops thereby represented were the ones in controversy, except what he was told. He used this language: "From my own knowl-

edge I cannot swear that those hoops which I saw down in the yard below were the same hoops which had before encircled this tub. All I know is that these pieces of hoops or hoops which were shown me in the yard, that they came from this tub, is that some other people told me, and my knowledge is alone and solely based upon that what I have been told. . . . I merely know that when I went down there, that a man first directed me to go . . . down that way. . . . Then we met somebody else that showed us the hoops and went away, and told me they were from the tank." Thereupon counsel for appellant moved the court to strike out all of the photographer's evidence and the photographs. It is easily seen that there was then no satisfactory evidence of the identity of the hoops photographed with those in controversy, none whatever. The question of competency, though once submitted and decided, and properly decided we should say, was not necessarily settled for the trial. It was proper to present it anew at any time and as often during the trial as evidence was produced furnishing reasonable ground therefor. That the motion to strike out should have been granted seems manifest. No one would venture to suggest, seriously, that the photographs were competent evidence upon the strength of mere hearsay evidence, or that the added element shown by the evidence, that the photographer discovered some indications of the broken hoops photographed having been recently in contact with material similar to that which was in the tank when it was ruptured, or the further element shown later during the trial, that the hoops from the vat were thrown into the yard with a mass of waste material of the same kind. After the motion to strike out was decided no proof was given to render the ruling nonprejudicial. The person who pointed out the hoops to the photographer was not called as a witness, or definitely discovered, while there was much testimony as to the age of the hoops and their appearance on the vat before the accident, indicating, we may say, to a moral certainty,

that the photographer photographed the wrong hoops. Not half the natural life of the hoops had elapsed at the time of the accident. They were painted when put on the tank in 1894, again in 1896, and again in 1899, on each of which occasions they were, to all appearances, perfect. The evidence is to the effect that shortly before the accident they were carefully examined for defects and none was found. There is nothing in the record, that I can discover, to discredit that evidence. It is so utterly inconsistent with the hoops being in the condition indicated by the photographs as to render the few circumstances relied upon to show competency without any evidentiary effect.

On the question of whether there is any evidence to sustain the verdict of the jury that appellant was guilty of a failure to exercise ordinary care in respect to discovering that the hoops were unsafe, I agree with what is said in the opinion filed by Justice BARDEEN. I am unable to point to any evidence or circumstance indicating failure of duty on appellant's part. There was nothing in the age of the vat, the quality of the hoops, the manner in which they had been cared for, or their appearance on the tank, to suggest that they were dangerously defective. All the indications up to the time of the accident point to the contrary. As Justice BARDEEN suggests, if we are to say that there was sufficient evidence on the question of competency to overrule the trial court on that question, still the credibility of the pictures as evidence remains to be determined in the light of all the other evidence in the case; and it seems neither the jury nor the court was warranted in deciding that they overshadowed the large amount of evidence that the hoops, when in place on the vat, did not show any serious defects. The mere appearance of some broken, worn-out hoops, not shown unmistakably to be the ones that came from the vat, cannot reasonably successfully impeach the undisputed evidence that those in controversy were comparatively new at the time of the accident, and

the evidence of witnesses who testified with apparent fairness, and, so far as appears, could readily have been confronted with witnesses on behalf of respondent testifying to the contrary, at least on some material points, if they testified falsely. Under the circumstances the photographs were too weak to create a conflict with such evidence. The reasonable inferences in regard to the subject were substantially all one way, as it appears to me. The jury found the other way. It is one of the most important functions of a trial court to intervene in such a situation. Without the existence of that function and a firm exercise thereof, great injustice would be possible. This sufficiently shows my opinion as to how the trial court should have ruled on the motion of appellant for a correction of the verdict and for judgment in its favor, and as to the proper disposition of the case here.